## COLLINS *v.* STATE.

### Opinion delivered February 5, 1912.

1. JURY—WHEN ERRONEOUS RULING PREJUDICIAL.—An erroneous ruling that a juror is competent upon a challenge for cause is ground for reversal where the accused exhausted his peremptory challenges in challenging other jurors before the completion of the panel. (Page 182.)

2. SAME—WHEN JUROR INCOMPETENT.—The entertainment of preconceived notions about the merits of a criminal case renders a juror *prima facie* incompetent; and where such is fixed and was formed from talking with witnesses who purported to know the facts, then such opinion renders the juror incompetent to act impartially as a juror. (Page 182.)

3. SAME—WHEN JUROR INCOMPETENT.—Where a juror in a murder case testified that on the night of the killing he talked with some of the witnesses and formed an opinion as to defendant's guilt, and then stated that he thought defendant ought to be lynched for the alleged crime, and that he was willing to assist in lynching him, he was not a competent juror. (Page 184.)

4. HOMICIDE—DUTY TO INSTRUCT AS TO LOWER DEGREES.—Where there is any evidence tending to show that the defendant was guilty of a

lower degree of homicide than murder, as where evidence tended to show that the killing was induced by anger suddenly aroused, or by surprise, or by fear or terror, the trial judge should instruct the jury in reference thereto when requested by the defendant. (Page 185.)

Appeal from Lee Circuit Court; *Hance N. Hutton*, Judge; reversed.

*H. F. Roleson*, for appellant.

1. The court erred in ruling that Ewing was a competent juror. 45 Ark. 165; 56 *Id.* 382; 69 *Id.* 322.

2. Defendant was entitled to an instruction on manslaughter. 74 Ark. 444, 454; 162 U. S. 313; 82 Ark. 97.

*Hal L. Norwood*, Attorney General, *Wm. H. Rector*, Assistant, for appellee.

1. There was no evidence upon which to predicate an instruction as to manslaughter; but, if so, the failure was harmless error.

2. Ewing was a competent juror.

FRAUENTHAL, J. The defendant John Collins was indicted for the crime of murder in the first degree, charged with killing M. E. Yarbrough. He was convicted of this crime by a petit jury, and has appealed to this court seeking a reversal of the judgment entered upon the verdict. Among the grounds assigned by him why the judgment should be reversed are the following: (1) that the court committed error by refusing to excuse for cause one E. H. Ewing, who was called as a juror to try the case; (2) because the court erred in the rulings made by it on various instructions; and (3) because there was not sufficient evidence to warrant the verdict that was returned by the jury.

In selecting the jury to try the defendant, one E. H. Ewing was summoned and called as a venireman. Upon his *voir dire* he made, in substance, amongst others, the following statement: that he had known the defendant about four months, and that he had heard something of the charge made against him; that he had formed and entertained an opinion as to the guilt or innocence of the defendant, but that it was based upon rumor; that he could lay aside and disregard the opinion which he had. The juror was accepted, but, before the panel of the jury was completed, he stated further upon his examination

that he was in the city of Marianna upon the night of the killing, and that he there stated that he thought that the defendant ought to be lynched, and that he was willing to assist in lynching him.  The defendant moved the court to declare the said Ewing incompetent to serve as a juror in the case and to excuse him for cause.  His motion was overruled by the court, to which ruling exception was duly made.  The defendant then challenged the juror peremptorily.  Thereupon, in the further selection of the jury, the defendant exhausted all of his peremptory challenges, before the panel of the jury was finally completed.  It is insisted by the defendant that the venireman Ewing was incompetent, and that the court committed error in not sustaining the motion challenging him for cause and by such erroneous ruling he was prejudiced.  He contends that he was thereby forced to take a juror whom he might have challenged, as he exhausted all his peremptory challenges.  In the case of *Caldwell* v. *State*, 69 Ark. 322, this court held (quoting syllabus):  "An erroneous ruling that a juror is competent upon a challenge for cause is ground for reversal where the accused exhausted his peremptory challenges in challenging other jurors before the completion of the panel."  This has been the uniform ruling of this court, and in the case of *York* v. *State*, 91 Ark. 582, the same rule was again announced and reaffirmed. In that case the court said, "This court has uniformly held that if, after a court has erroneously overruled a challenge of a juror for cause, the defendant elected to challenge him peremptorily, he could not avail himself of the error unless he had exhausted his peremptory challenges," thereby holding that he could protect himself against such error, and would not be allowed to suffer by so doing if he exhausted his peremptory challenges before the completion of the jury.  *Langford* v. *State*, 98 Ark. 327.  It follows that, if the court erred in ruling that Ewing was a competent juror, the defendant was deprived of the right given to him by the law to obtain a fair and impartial trial, and he was therefore necessarily prejudiced by this ruling of the court.

In order that the defendant may have the opportunity to obtain a jury free from bias and prejudice to try him, it is provided by our statute (Kirby's Digest, § 2347) that each juror may be examined and cross examined on oath touching his

qualification.  In order for a juror to be competent, he should be wholly indifferent, both as to the person who is tried and the case for which he is tried.  He must be free from bias or prejudice or from any fixed opinion as to the merits of the case, so that he will act with entire impartiality in deciding the questions of fact and in arriving at his verdict.  The bias or prejudice which will render a juror incompetent to sit in a case may arise from various causes, and depends largely upon the facts and circumstances of each case.  This bias or prejudice may spring from an opinion which has been formed by the juror concerning the merits of the case.  In the cases of *Polk* v. *State*, 45 Ark. 165, and *Vance* v. *State*, 56 Ark. 402, it was held that an opinion entertained by a juror requiring evidence to remove it rendered the juror incompetent; but in the cases of *Benton* v. *State*, 30 Ark. 328, *Casey* v. *State*, 37 Ark. 67, and *Sneed* v. *State*, 47 Ark. 180, it was held that an opinion by a juror relative to the merits of a case requiring evidence to remove it does not necessarily disqualify him from sitting in the case.  In the case of *Hardin* v. *State*, 66 Ark. 53, these conflicting decisions are fully discussed, and the ruling made in the case of *Sneed* v. *State, supra,* was there approved and adopted, which is as follows:  "The entertainment of preconceived notions about the merits of a criminal case renders a juror *prima facie* incompetent; but when it is shown that the impression is founded on rumor and not of a nature to influence his conduct, the disqualification is removed."  Since then this rule relative to the competency of a juror has been adhered to and approved.  But where it appears that the opinion of the juror concerning the case is fixed and was formed from talking with witnesses who purported to know the facts, then "such opinion renders him incompetent to act impartially as a juror in contemplation of law."  *Caldwell* v. *State*, 69 Ark. 322.  The manifest purpose of an examination of a juror upon his *voir dire* is to obtain those persons as triers of the guilt or innocence of the accused who do not possess a fixed opinion of the merits of the case or such a feeling with regard to the accused as would influence their verdict.  If it appears that the juror has such a fixed opinion or such a feeling towards the defendant or his cause, then he does not possess, in contemplation of law, the ability to render an impartial verdict.  It appears that the murder with which the

defendant was charged occurred in the vicinity of the city of Marianna. On the night after the killing and after the defendant had been arrested, the juror Ewing was in Marianna, and then stated that he thought the defendant ought to be lynched for the alleged crime for which he was being tried; and the juror further stated that he was willing to assist in lynching him. He had been asked whether he entertained an opinion as to the guilt or innocence of the defendant, and had answered that he did. It is true that he also stated that this opinion was based upon rumor, but he further stated that he heard some of the witnesses speak of the case and talked to one of them who, in the trial of the case, gave testimony relative to the dying declaration of the deceased as to the circumstances of the killing. He was also asked by the court "whether he felt that way now" (referring to his willingness to assist in lynching the defendant), and in answer thereto he said, "No." The juror lived in the community where this alleged murder was committed, and his statement made on his *voir dire* that on the night of the killing he was willing to lynch the defendant for the alleged crime indicates that great excitement existed, and resentment against defendant was entertained by the people of that community, to whom the juror thus expressed himself. It shows that he must have talked to others relative to the case and formed an opinion that the defendant deserved death and became possessed of such a feeling against the defendant that he was willing to assist in lynching him. The killing occurred on September 11, 1911, and the trial of the defendant for the crime was had on October 15, 1911. It may be that the juror was able to discard the opinion which he formed from his mind and this feeling from his heart; but we think that, under the circumstances and from his statements, this opinion and his prejudice towards the defendant were so pronounced that he was not a proper person to act as a juror in his trial. We feel convinced that under these circumstances and from the statements made by the juror he had such an opinion relative to the case and such a feeling towards the defendant and his cause that he did not possess that indifference both towards the State and the defendant and that freedom from bias and prejudice which the law demands one to have in order to render an impartial verdict. It follows that the court erred in ruling that Ewing was a com-

petent juror to try the case of the defendant, and that this erroneous ruling deprived the defendant of that fair and impartial trial which the law guarantees to him.

Inasmuch as the judgment in this case must be reversed for the above error, we have not deemed it necessary to note the other assignments of error pressed upon our attention by the defendant. Upon another trial it is not likely that these alleged errors will occur. In view of the fact, however, that another trial must be had, we think it proper to note that we are of opinion that the defendant was entitled to an instruction upon voluntary manslaughter. It appears from the testimony of the defendant that the killing occurred in the darkness of night, and that at the time he did not know that it was the deceased. The defendant and one Arthur Jones were riding in a buggy near the home of the deceased when Jones fired his pistol one or more times. Deceased came from his house and near to the buggy with a gun in his hands and cried to them to halt, and both Jones and the deceased began shooting at each other about the same time; that both Jones and the defendant were surprised by the appearance of the deceased near the buggy and by his attack made with gun in hand, and, not knowing who he was, they feared either that they would be robbed by him or receive injury to their persons from him; and that by reason of this fear and surprise Jones fired at the deceased. This, in short, is the testimony of the defendant himself, which though contradicted in many material points by other evidence in the case, nevertheless presented an issue which, under the law, he had a right to have submitted to and be determined by the jury upon proper instructions. It appears that the court instructed the jury relative to murder in the first and second degrees, but did not instruct them at all in reference to the crime of manslaughter or the punishment for that degree of homicide, although requested to do so by the defendant. The grade of a homicide may be reduced from murder to manslaughter by reason of a passion caused by a provocation apparently sufficient to make the passion irresistible. The passion may consist of anger or fear or terror. These are the causes from which the passion springs; and, whether induced by the one or other of these causes, it will reduce the grade of the homicide from murder to manslaughter. It is perfectly proper to show

that in a given case the passion did exist for the reason that it was induced by anger suddenly aroused, or by surprise, or by fear, or by terror; and where there is any evidence tending to show that the defendant was guilty of a lower grade of homicide than murder, the trial judge should instruct the jury in reference thereto when requested by the defendant. *Ringer* v. *State*, 74 Ark. 262; *Allison* v. *State*, 74 Ark. 453; *Williams* v. *State*, 100 Ark. 218; *Stevenson* v. *United States*, 162 U. S. 313; *Wallace* v. *United States*, 162 U. S. 466. Upon an examination of the evidence adduced upon the trial of this case, we are of opinion that there was some testimony warranting an instruction upon the crime of voluntary manslaughter.

For the error above indicated the judgment is reversed, and this cause remanded for new trial.

McCULLOCH, C. J., (dissenting). The venireman, Ewing, stated that the opinion which he had formed with reference to the guilt of the defendant was based entirely upon rumor, and that the feeling which prompted him, on the night of the killing, to express a willingness to assist in lynching the defendant arose from the rumors he had heard. He stated further that such feeling had entirely passed away, and that, notwithstanding the opinion he had formed on rumor, he could go into the jury box and give the defendant a fair and impartial trial according to the law and the evidence. It is true he stated that he talked with Doctor McLendon, who was one of the witnesses in the case, but he does not say that Doctor McLendon told him anything about the facts in the case. On the contrary, he states positively that the only opinion he had was based on rumor, and not on the testimony of witnesses. It seems clear to me that the juror was qualified, and that the court did not err in so holding. If an opinion based on rumor was not sufficient to disqualify him as a juror. I can not see why it should be held that he was disqualified on account of a disposition to lynch the accused, based on rumor, which had entirely passed away at the time of the trial and left his mind free from any such prejudice. The question was, whether the juror had formed or expressed an opinion not based on mere rumor, and whether the witness was free from bias and prejudice at the time of the trial. It is clear from the

statement of the juror that his opinion was based entirely upon rumor, and that the passion and prejudice which he felt towards the defendant on the night of the killing had entirely passed away. The fact that he had on the night of the killing entertained such a feeling should only be considered for the purpose of determining whether or not he entertained such feeling at the time he was called into the jury box; and if the court concluded that the prejudice had been entirely removed, there is no reason why the man was not competent to sit as a juror in the case. I think that, as the learned circuit judge heard the statement of the juror, and was in position to better determine the state of the latter's feeling, we ought not to disturb the conclusion reached by the court unless it clearly and distinctly appears that the juror at the time of the trial had such an opinion or entertained such feeling of prejudice against the accused that he was incapacitated to give the case a fair and dispassionate hearing.