J.D. STEWART *v.* STATE of Arkansas

CR 93-478                                        870 S.W.2d 752

Supreme Court of Arkansas
Opinion delivered February 28, 1994

*Thomas A. Potter*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Senior Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This is a first degree murder case where the appellant, J.D. Stewart, was sentenced to 40 years. He raises three issues on appeal: (1) whether the trial court erred in refusing to give his proffered instruction on duress to the jury; (2) whether the trial court erred in granting the State's motion in limine to prevent expert testimony concerning Stewart's intent and culpability; and (3) whether the trial court erred in refusing to allow defense counsel to delve into specific instances of the victim's alleged propensity for violence. We hold that the trial court did not err in the three rulings, and we affirm.

On March 17, 1990, at about 4:30 p.m., Stewart entered the Citizen's Cafe in Texarkana. It was Stewart's birthday, and the restaurant was preparing food for a party. The victim, Percy

Ragland, was seated on a stool inside the cafe. Ragland and Stewart exchanged heated words, and when Stewart approached Ragland, Ragland pushed him away. Stewart then pulled a large caliber pistol and pointed it at Ragland, who got up and started walking towards the door. Stewart fired his pistol once, striking Ragland in the upper right back and killing him.

Shortly after the shooting, Stewart turned himself in at the Texarkana Police Station. Detective John Gann took a statement from him where he said that he did not know what happened and was just holding the gun when it went off. He added, "I didn't mean to kill anyone." He also said that Ragland tried to get him to buy him a beer and would not leave him alone when he refused. He said that he had had trouble with Ragland in the past. Stewart admitted that Ragland did not have a weapon and had not threatened him. Stewart was charged with first degree murder.

At the request of his defense counsel, Stewart was then examined by Dr. James R. Blackburn, a clinical psychologist with the Southwest Arkansas Counselling and Mental Health Center in Texarkana. Dr. Blackburn's July 31, 1990 report stated that at the time of the shooting Stewart realized the criminality of his conduct. The report also noted that Stewart was discharged from the Marines after serving two years and six months in Vietnam in 1969 and that he was suffering from emotional stress. On July 24, 1991, Dr. Blackburn issued a second report where he concluded that Stewart, though not psychotic at the time of the shooting, had a mental defect caused by stress and fear that rendered him unable to conform his behavior at that time. Blackburn was of the opinion that under physical threat or aggression, Stewart would overreact and panic as the result of impaired judgment. The doctor also opined that he had a greater than average lack of ability to delay his reaction to threats or aggressiveness.

Dr. Marianne Seidel, a psychiatrist in Texarkana, also examined Stewart at the request of the trial court to determine his sanity at the time of the slaying. In her report, she stated that while he may have suffered some psychotic symptoms immediately after Vietnam, those symptoms were resolved very early on in his stay at Oakland Naval Hospital in 1969 when he was put on psychotic medications. She was also of the opinion that he "probably was not ever truly schizophrenic," and that at the time of the

shooting, he was not suffering from any psychotic illness. Dr. Seidel specifically stated that in her opinion his behavior was not the result of a momentary psychosis that rendered him unable to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. In the latter respect, she disagreed with Dr. Blackburn's second report.

Stewart filed a motion for acquittal due to mental incapacity which was denied. The day of the trial the State filed a motion in limine to prohibit defense counsel from asking expert witnesses whether Stewart had the purposeful intent to commit murder at the time of the killing. The motion was granted.

At trial, Carrie Newton testified that she was a barmaid in the cafe and viewed the altercation between Stewart and Ragland and the murder. She testified that Ragland did not have a pistol and had walked eight to ten feet toward the front door when he was shot. On cross examination, defense counsel asked her whether the victim had a reputation for violence in the community. She answered that she had not known Ragland to be violent. The State objected on grounds of relevance, and the objection was sustained.

Robert Nelson, who also worked at the cafe, described the shooting at trial. He stated that he did not see Ragland make any threatening moves toward Stewart. Ragland, he testified, was almost at the door of the cafe when he was shot.

Stewart took the stand as part of his defense and testified that his aunt had a relationship with Ragland and that he had seen them have disagreements. The State objected to this on grounds of relevance, and a bench conference was conducted. The State argued that what the defense was trying to offer was evidence of prior bad acts of Ragland which was not relevant. Defense counsel argued that evidence that Stewart observed Ragland hit his aunt established that Stewart had reason to fear Ragland. The trial court ruled that if the defense could show that Ragland had placed Stewart in actual fear by past actions, defense counsel could inquire into prior acts of aggression on the part of Ragland.

Dr. Blackburn then testified as a defense witness that Stewart told him that he was afraid of Ragland because of Ragland's relationship with his aunt. The state objected again, and the trial

court sustained the objection. Dr. Blackburn added that Stewart gave him no other reason why he was afraid of Ragland. The doctor posited that Stewart's "mental defect" prevented him from being able to conform his conduct and formulate the requisite intent at the time he shot Ragland. The doctor was of the opinion that Stewart suffered from a "paranoid personality disorder."

Dr. Marianne Seidel testified on rebuttal that after examining Stewart and reviewing his medical records, she was of the opinion that he appreciated the nature of his conduct and was able to conform his conduct on the day he shot Ragland. On cross examination, the defense asked Dr. Seidel about her report which contained a reference to Stewart's intent at the time of the shooting. The State objected, and a bench conference ensued. The court instructed the defense that it could not ask Dr. Seidel to read to the jury that part of her report which stated that Stewart's behavior did not "appear to have been premeditated but rather a reaction to a perceived threat to his own safety and well-being." The trial court did allow the full report to be proffered.

After the jury retired and per an agreement among counsel and the trial court, defense counsel objected to the trial court's failure to instruct the jury on the affirmative defense of duress. That requested instruction was not proffered and is not part of the record in this appeal. The jury found the appellant guilty of murder in the first degree and sentenced him to 40 years.

## I. DURESS INSTRUCTION

Stewart first asserts that the trial court erred in refusing to instruct the jury on the affirmative defense of duress. Specifically, he contends that there was evidence that at the time of the shooting he suffered from an impairment which rendered him unable to control his conduct.

■■ We do not reach this issue because it was not preserved for appeal. The instruction in question was not proffered into the record, and we do not have it before us for our review. This court has stated that it is the appellant's duty to bring up a record sufficient to show that the trial court erred. *Enos* v. *State*, 313 Ark. 683, 858 S.W.2d 72 (1993). In order to preserve an objection to an instruction for appeal, the appellant must make a proffer of the instruction to the judge. *Vickers* v. *State*, 313

Ark. 64, 852 S.W.2d 787 (1993). That proffered instruction must then be included in the record and abstract to enable the appellate court to consider it. *Camp* v. *State*, 288 Ark. 269, 704 S.W.2d 617 (1986). An instruction that is not contained in the record is not preserved and will not be addressed on appeal. *Marcum* v. *State*, 299 Ark. 30, 771 S.W.2d 250 (1989). We further note that objections made to the instructions given or based on an instruction not given are untimely after the jury retires. *See Young* v. *Johnson*, 311 Ark. 551, 845 S.W.2d 509 (1993).

## II. EXPERT TESTIMONY ON INTENT

Stewart's next claim of error is that the trial court erred in granting the State's motion in limine which prevented his attorney from questioning the mental health experts on his intent and culpability.

■ ▪ The standard of review for a trial court's ruling on the admissibility of expert testimony is abuse of discretion. *Utley* v. *State*, 308 Ark. 622, 826 S.W.2d 268 (1992). Expert testimony is admissible when it will aid the jury to understand evidence presented or to determine a fact in issue. Ark. R. Evid. 702; *Harris* v. *State*, 295 Ark. 456, 748 S.W.2d 666 (1988). In determining whether expert testimony will aid the trier of fact, the question becomes whether the subject is beyond the ability of a lay person to understand. *Utley* v. *State, supra.*

Stewart was charged with first degree murder for purposely causing the death of Ragland under Ark. Code Ann. § 5-10-102(a)(2) (Supp. 1990). Following his examination by Dr. Blackburn and Dr. Seidel, he moved for acquittal on grounds that he lacked capacity, as a result of mental disease or defect, to conform his conduct to the requirements of law. The motion was denied. The prosecutor then moved in limine to prevent either Dr. Blackburn or Dr. Seidel from testifying as to whether Stewart acted with purpose to cause Ragland's death or, stated another way, whether he lacked the specific intent to do so at the time of the murder. The trial court granted the motion which limited this expert testimony.

Jurisdictions in this country have split over the issue of whether expert testimony on the ability of a defendant to form specific intent to murder is admissible. *See Admissibility of Expert*

*Testimony As To Whether Accused Had Specific Intent Necessary For Conviction*, 16 ALR 4th 666 (1982). The better view, in our judgment, is that it is not. We recognize that psychiatric testimony concerning whether a defendant has the ability to conform his conduct to the requirements of law at the time of the killing as part of an insanity defense may seem in some cases to approximate testimony on whether the defendant had or did not have the required specific intent to commit murder at a precise time. We draw a distinction between the two categories of testimony, however. A general inability to conform one's conduct to the requirements of the law due to mental defect or illness is the gauge for insanity. It is different from whether the defendant had the specific intent to kill another individual at a particular time. Whether Stewart was insane certainly is a matter for expert opinion. Whether he had the required intent to murder Ragland at that particular time was for the jury to decide.

Other jurisdictions have held that expert testimony on specific intent to murder is inadmissible. *See, e.g., Haas* v. *Abrahamson*, 910 F.2d 384 (7th Cir. 1990); *State* v. *Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (Neb. 1990); *State* v. *Clements*, 789 S.W.2d 101 (Mo. App. 1990); *State* v. *Bouwman*, 328 N.W.2d 703 (Minn. 1982). According to the Nebraska Supreme Court, expert testimony on homicidal intent is merely an expression of an expert on how the jury should decide the case. *State* v. *Reynolds, supra.* We agree. We further agree that the issue of whether the defendant formulated intent to kill is within the capability of lay jurors to decide. *State* v. *Clements, supra.* While expert testimony on whether a defendant lacked the capacity to form intent is probative, we question whether opinion evidence on whether the defendant actually formed the necessary intent at the time of the murder is. *State* v. *Bouwman, supra.*

Nor do we believe that Ark. R. Evid. 704 allowing opinions embracing an ultimate issue controls this matter. The threshold question under Rule 704 is whether the testimony is otherwise admissible. Under Ark. R. Evid. 702 expert testimony must assist the trier of fact to be probative. Under Ark. R. Evid. 401-403, it must be relevant and not misleading or confusing to the jury. Expert opinion on whether Stewart killed Ragland purposely on March 17, 1990, at least had the potential for being misleading and confusing to the jury.

■   The trial court did not abuse its discretion in refusing to permit the expert opinion concerning the ability of Stewart to form the requisite mental intent at the time he shot Ragland. We affirm its ruling on this point.

### III. INQUIRY INTO VIOLENT ACTS

Stewart's final point is that the trial court erred in refusing to allow an inquiry into specific instances of violent or aggressive conduct on the part of Ragland, after the State had introduced evidence of Ragland's propensity for peacefulness. Ragland claims that the State's witnesses, Carrie Newton and Robert Nelson, testified as to Ragland's character trait for peacefulness and argues that this testimony was premature because the defense had not offered evidence that Ragland was the aggressor. At the very least, Stewart contends, this testimony opened the door for contravening testimony on Ragland's aggressiveness.

■   Under Ark. R. Evid. 404 (a)(2), evidence of a pertinent trait of a victim's character is admissible. The State, however, is limited in character evidence about the victim under 404(a)(2) to rebutting what the defense has presented. In cases where the character of the victim is an essential element of the defense, Ark. R. Evid. 405(b) permits inquiry into specific instances of the victim's conduct. The trial court concluded that it did not believe that evidence of the victim's character trait for aggressiveness was relevant under these facts. This ruling was a matter for the trial court's discretion and is supported by the facts.

■   Here, the victim was shot in the back by Stewart. Irrespective of any penchant for violence that Ragland may have had, there was testimony that he was walking away from Stewart when he was shot. We have held that where a victim was shot in the back, a trial court did not err in refusing to permit defense counsel to delve into prior acts of aggression by the victim. *Heinze* v. *State*, 309 Ark. 162, 827 S.W.2d 658 (1992). The same rationale applies to the case at bar. The fact that the State may have first "opened the door" regarding the victim's character does not overcome the problem of relevancy under these circumstances. Nor do we consider the testimony of Newton and Nelson on Ragland's propensity for peacefulness to be sufficiently preju-

dicial under these circumstances to warrant a new trial due to its irrelevancy.

There was no error in the trial court's ruling.

Affirmed.