Amy BANKSTON  *v.*  STATE of Arkansas

CR 03–1082                                           205 S.W.3d 138

Supreme Court of Arkansas
Opinion delivered March 10, 2005

Hampton & Larkowski, by: Mark F. Hampton, for appellant.

Mike Beebe, Att'y Gen., by: Kent G. Holt, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Amy Bankston appeals the judgment of the Pulaski County Circuit Court convicting her of one count of second-degree murder and three counts of terroristic act and sentencing her to four consecutive terms of twenty years' imprisonment. For reversal, Appellant argues that the trial court erred in excluding the testimony of a psychiatrist and in refusing to instruct the jury on the lesser-included offense of reckless manslaughter. This case was certified to us from the Arkansas Court of Appeals as presenting an issue needing further development or clarification of the law pertaining to the admissibility of expert testimony of mental disease or defect to show a lack of intent where the defendant has not presented the insanity defense. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(1). We find no error and affirm.

Because Appellant does not challenge the sufficiency of the evidence against her, it is not necessary to recite in great detail the facts surrounding her crimes. Suffice it to say that on December 4, 2000, Sharon Frank was driving a blue Suburban on Roosevelt Road in Little Rock. In the vehicle with Mrs. Frank were her husband and two of her children, who were then ages five and seven. The Suburban belonged to Mrs. Frank's brother, James Bankston, who was Appellant's estranged husband. As Mrs. Frank was driving down Roosevelt Road, she saw Appellant coming toward her in her car. Shortly after passing Appellant, Mrs. Frank was forced to stop for a red light. When she looked into her rearview mirror, she saw Appellant make a U-turn in the middle of the road and pull in behind her at the light. An unknown car was stopped between the two vehicles.

Mrs. Frank then saw Appellant get out of her car, with a gun in her hand, and walk up behind the Suburban. She told her husband what she saw, and he told the children to get down and instructed his wife to drive through the red light. However, before Mrs. Frank could actually move her vehicle, she heard four gunshots. She then saw her five-year-old son, Jamal Wood, lying on the floor, having been shot in the head. Jamal later died.

Appellant was charged with one count of capital murder and three counts of terroristic act. During the trial, she presented testimony from several witnesses to the effect that she and her estranged husband had a volatile relationship during the months prior to the shooting. Her seven-year-old son and her sister testified about an incident that likely occurred some time in October 2000, in which Bankston had choked Appellant.[1] Appellant's mother testified to an incident, that also likely occurred in October 2000, in which Bankston had destroyed some of Appellant's property. Finally, Appellant's son testified that two days prior to the shooting, Bankston had rammed Appellant's car with his, causing slight damage to Appellant's car. Appellant asserted that the foregoing testimony was evidence that she was provoked by Bankston into taking the actions she did, namely shooting into his Suburban while it was stopped at a red light.

---

[1] Both Appellant's sister and her son testified that the choking incident had occurred approximately two weeks prior to the December 4 shooting. However, the prosecution pointed out on cross-examination that the home in which the incident took place had actually burned down in October.

Based on the foregoing defense testimony, Appellant sought and received an instruction on the lesser-included offense of manslaughter, under Ark. Code Ann. § 5-10-104(a)(1) (Repl. 1997). That section provides that a person commits manslaughter if:

> He causes the death of another person under circumstances that would be murder, except that he causes the death under the influence of extreme emotional disturbance for which there is reasonable excuse. The reasonableness of the excuse shall be determined from the viewpoint of a person in the defendant's situation under the circumstances as he believes them to be[.]

As further evidence of manslaughter, Appellant sought to present testimony from Dr. Irvin Kuo regarding his diagnosis of her as having mild mental retardation and schizo-affective disorder. Appellant contended that Dr. Kuo's testimony was relevant because section 5-10-104(a)(1) requires the jury to view the reasonableness of the excuse "from the viewpoint of a person in the defendant's situation under the circumstances as he believes them to be[.]"

The trial court ruled that the expert testimony from Dr. Kuo was inadmissible because Appellant was not proceeding with an insanity defense. As support for its ruling, the trial court relied on this court's holdings in *Stewart v. State*, 316 Ark. 153, 870 S.W.2d 752 (1994), and *Hinkston v. State*, 340 Ark. 530, 10 S.W.3d 906 (2000). In *Stewart*, this court held that expert testimony as to whether the defendant formed the specific intent to commit the crime is inadmissible, unless the defense is one of insanity.[2] This court explained:

> We recognize that psychiatric testimony concerning whether a defendant has the ability to conform his conduct to the requirements of law at the time of the killing as part of an insanity defense may seem in some cases to approximate testimony on whether the

---

[2] In its brief on appeal, the State acknowledges an inconsistency between the holding in *Stewart*, 316 Ark. 153, 870 S.W.2d 752, and Ark. Code Ann. § 5-2-303 (Repl. 1997), which provides: "Evidence that the defendant suffered from a mental disease or defect is admissible to prove whether he had the kind of culpable mental state required for commission of the offense charged." However, we do not attempt to reconcile this potential inconsistency at this time, as both Appellant and the State agree that this issue was never presented below, nor is it pursued by Appellant on appeal.

> defendant had or did not have the required specific intent to commit murder at a precise time. We draw a distinction between the two categories of testimony, however. A general inability to conform one's conduct to the requirements of the law due to mental defect or illness is the gauge for insanity. It is different from whether the defendant had the specific intent to kill another individual at a particular time. Whether Stewart was insane certainly is a matter for expert opinion. Whether he had the required intent to murder Ragland at that particular time was for the jury to decide.

316 Ark. at 159, 870 S.W.2d at 755. In *Hinkston*, this court held that the expert testimony proffered by the defense, to the effect that the defendant lacked the ability to conform his conduct to the requirements of the law due to mental disease or defect, was not relevant because the defendant was not asserting the insanity defense.

For reversal, Appellant argues that the trial court's ruling was erroneous. While she concedes that she was not asserting the insanity defense at trial, she argues that Dr. Kuo's testimony was relevant to show that she was acting under the influence of an extreme emotional disturbance at the time of the shooting. She contends that his testimony was evidence that would have allowed the jury to fulfill its requirement under section 5-10-104(a)(1) to judge the reasonableness of her excuse for killing Jamal from the viewpoint of a person in Appellant's situation and under the circumstances as she believed them to be. She argues that unlike the defendants in *Stewart* and *Hinkston*, she was not attempting to get Dr. Kuo to testify as to the ultimate issue in the case, *i.e.*, whether she acted with the requisite mental state to commit the crimes for which she was charged.

The State argues that Appellant is erroneously viewing the term "extreme emotional disturbance" as being the equivalent of "mental disease or defect." The State asserts that the "extreme emotional disturbance" found in section 5-10-104(a)(1) refers to an emotional disturbance caused by some type of provocation and is therefore akin to the bygone concept of "heat of passion." The State asserts further that the term does not refer to a diminished mental capacity due to mental disease or defect. We agree.

This court has long held that the type of manslaughter provided in section 5-10-104(a)(1), which was formerly called voluntary manslaughter, requires a showing of both extreme emotional disturbance, or heat of passion, and provocation. The

type of emotional disturbance, or passion, referred to in the statute is that resulting from the provocation, as this court explained in *Clardy v. State*, 96 Ark. 52, 131 S.W. 46 (1910):

> The passion that will reduce a homicide from murder to manslaughter may consist of anger or sudden resentment, or of fear or terror; but the passion springing from any of these causes will not alone reduce the grade of the homicide. *There must also be a provocation which induced the passion*, and which the law deems adequate to make the passion irresistible. An assault with violence upon another *who acts under the influence thereof* may be sufficient to arouse such passion; but every assault is not necessarily a sufficient provocation to mitigate the crime from murder to manslaughter; and words or conduct, however insulting or offensive, are not adequate to reduce the crime to manslaughter, although the homicide was committed in a passion provoked by them; and mere threats or menaces, where the person killed was unarmed and neither committing nor attempting to commit violence on the defendant at the time of the killing will not free him of the guilt of murder.

*Id.* at 55–56, 131 S.W. at 47 (emphasis added) (citing *Petty v. State*, 76 Ark. 515, 89 S.W. 465 (1905); *Allison v. State*, 74 Ark. 444, 86 S.W. 409 (1905); *Green v. State*, 45 Ark. 281 (1885); *Stanton v. State*, 13 Ark. 317 (1853); *Wharton on Homicide*, 276; 2 Bishop, *New Criminal Law*, §§ 697, 702).

Similarly, this court held in *Collins v. State*, 102 Ark. 180, 143 S.W. 1075 (1912):

> The grade of a homicide may be reduced from murder to manslaughter by reason of a *passion caused by a provocation* apparently sufficient to make the passion irresistible. The passion may consist of anger or fear or terror. These are the causes from which the passion springs; and, whether induced by the one or other of these causes, it will reduce the grade of the homicide from murder to manslaughter. It is perfectly proper to show that in a given case *the passion did exist for the reason that it was induced by anger suddenly aroused, or by surprise, or by fear, or by terror*[.]

*Id.* at 185–86, 143 S.W. at 1077 (emphasis added).

The foregoing cases were decided under prior law, which defined voluntary manslaughter as that which is committed "upon a sudden heat of passion, caused by provocation, apparently

sufficient to make the passion irresistible." *See* Ark. Stat. Ann. § 41-2208 (Repl. 1964). Our current manslaughter statute, section 5-10-104, was enacted by the General Assembly as part of Act 280 of 1975, which created our comprehensive Criminal Code. *See Harshaw v. State*, 344 Ark. 129, 39 S.W.3d 753 (2001). The Original Commentary to this section explains that the term "extreme emotional disturbance" was substituted for "the archaic common law term 'heat of passion.' " It then goes on to explain: "[The Code] treat[s] on a parity with provocation cases in the classic sense, situations where the provocative circumstance is something other than an injury inflicted by the deceased on the actor but nonetheless is an event calculated to arouse extreme mental or emotional disturbance. . . ." (Quoting *Model Penal Code* § 210.3, *Comment at 41* (Tent. Draft No. 9, 1959)). Thus, even though the legislature changed the term "heat of passion" to "extreme emotional disturbance," it did not change the type of passion or disturbance referred to, namely that resulting from an event of provocation. Indeed, this court has looked to cases under the former law as instructive of the elements required to prove manslaughter under section 5-10-104(a)(1). *See Kail v. State*, 341 Ark. 89, 14 S.W.3d 878 (2000); *Rainey v. State*, 310 Ark. 419, 837 S.W.2d 453 (1992).

In *Kail*, 341 Ark. 89, 14 S.W.3d 878, this court explained that whether the concept is expressed as the former term "heat of passion" or scientifically defined as "extreme emotional disturbance," a defendant is not entitled to an instruction on manslaughter unless there is a factual basis showing that the defendant killed the victim "in the moment following 'provocation in the form of physical fighting, a threat, or a brandished weapon[.]' " *Id.* at 94, 14 S.W.3d at 880-81 (quoting *Spann v. State*, 328 Ark. 509, 515, 944 S.W.2d 537, 540 (1997)). Thus, the element of emotional disturbance may be proven by evidence of an external event calculated to arouse or provoke a reasonable person to take the actions that resulted in the victim's death. It is not the type of disturbance that is internally caused by mental disease or defect. Indeed, although section 5-10-104(a)(1) is derived from the Model Penal Code, there is a notable distinction in that our statute only refers to "extreme emotional disturbance," whereas the model code refers to "extreme *mental or* emotional disturbance." *See* Wayne R. LaFave, *Substantive Criminal Law* § 15.2(b)(10), at 505 (2d ed. 2003) (emphasis added) (quoting Model Penal Code § 210.3).

■ This court has repeatedly held that it will not reverse a ruling on the admissibility of evidence absent an abuse of discretion, as such matters are left to the sound discretion of the trial court. *See, e.g., Wyles v. State*, 357 Ark. 530, 182 S.W.3d 142 (2004); *Garner v. State*, 355 Ark. 82, 131 S.W.3d 734 (2003); *Smith v. State*, 354 Ark. 226, 118 S.W.3d 542 (2003). There is no such abuse of discretion in this case. The trial court did not err in refusing to admit expert testimony regarding Appellant's diagnosis of mild mental retardation and schizo-affective disorder. The testimony was not relevant as evidence of "extreme emotional disturbance" under section 5-10-104(a)(1). As evidenced by the foregoing cases, the type of disturbance that will reduce a homicide from murder to manslaughter is that resulting from an event of provocation, in the form of physical violence, a threat, or a brandished weapon, not that resulting from a mental disease or defect.

■ Nor was Dr. Kuo's testimony relevant to show Appellant's "situation" or the "circumstances" as she believed them to be at the time of the shooting, as those factors also relate to the event of provocation. A plain reading of section 5-10-104(a)(1) reveals that these factors are to be considered by the jury only to evaluate the reasonableness of the excuse for causing the victim's death. The excuse refers to the event of provocation. Thus, the jury is to consider the reasonableness of the event of provocation from the viewpoint of the defendant, considering the particular situation, *i.e.*, whether it involved a fight or a threatening encounter, and the circumstances as he or she believed them to be, *i.e.*, whether the victim was brandishing a weapon. The defendant's particular I.Q. and mental infirmities are not part of the consideration. As stated above, our statute does not take into consideration the defendant's mental disturbance, but only his or her emotional disturbance. Accordingly, it was not error for the trial court to refuse to allow Dr. Kuo's testimony.

For her remaining point on appeal, Appellant argues that the trial court erred in refusing to instruct the jury on the offense of manslaughter under subsection (a)(3) of section 5-10-104, which provides that a person commits manslaughter by recklessly causing the death of another person. She contends that there was evidence presented below showing that her actions in shooting at her

estranged husband's vehicle were reckless, and that the jury could have believed that she only intended to frighten her husband or damage his property.

This court has repeatedly held that it is reversible error to refuse to give an instruction on a lesser-included offense when there is the slightest evidence to support the instruction. *See, e.g., Wyles*, 357 Ark. 530, 182 S.W.3d 142; *Gaines v. State*, 354 Ark. 89, 118 S.W.3d 102 (2003); *Brown v. State*, 347 Ark. 44, 60 S.W.3d 422 (2001). Thus, we will affirm a trial court's decision not to give an instruction on a lesser-included offense only if there is no rational basis for giving the instruction. *Id.*

During the instruction conference below, the trial court asked defense counsel to explain the evidentiary basis for instructing the jury that Appellant had acted recklessly. Defense Counsel replied: "If the jury felt that she shot the gun not with an, excuse me, not with an intent to kill, but maybe just out of frustration or an intent to scare Mr. Bankston[.]" The trial court then asked: "Wouldn't that be knowingly and second degree murder?" The deputy prosecutor responded that Appellant's actions were, at a minimum, done knowingly, based on the evidence that showed that she "shot into a car knowing that there were people in it." The trial court agreed with the prosecution and denied the instruction.

For reversal, Appellant asserts that there was evidence presented below showing that she and her estranged husband had been engaged in a "violent struggle" for some period of time and that she had been assaulted by her husband prior to the shooting. She asserts that based on this evidence, it is rational to infer that when she saw her husband's Suburban, she shot at it with the intent to scare him, not to kill him, or that she shot at it with the intent to cause damage to the vehicle.

Arkansas Code Annotated § 5-2-202(3) (Repl. 1997) provides:

> A person acts recklessly with respect to attendant circumstances or a result of his conduct when he consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of a nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation[.]

The State argues that Appellant's act of shooting four times into an occupied vehicle stopped at a stoplight goes beyond a gross deviation

of the standard of care that a reasonable person would observe. It contends that Appellant's actions in shooting into the Suburban could never be viewed as rational activity that was simply carried out in a reckless manner. Rather, it asserts that her actions were intentional, regardless of whether she intended to bring about the particular result, namely the death of five-year-old Jamal.

The record reflects that the prosecution presented testimony from two eye witnesses, Sharon Frank, the victim's mother and the driver of the Suburban, and Taeishia "Monique" Walker, a passenger in Appellant's car. Mrs. Frank testified that she had borrowed her brother's (Appellant's estranged husband's) Suburban because her vehicle had broken down. She stated that she had been driving the vehicle for the better part of the past three months, and that Appellant was aware that she had borrowed the vehicle, because she had spoken to her brother about it in front of Appellant. On the night of the shooting, Mrs. Frank saw Appellant driving her vehicle on Roosevelt Road, approaching Mrs. Frank and her family. She saw Appellant make a U-turn in the street and pull up behind the Suburban at a stoplight. Mrs. Frank then saw Appellant get out of her car, holding a gun with both of her hands. She then said, "Oh, my God, Amy has a gun." Mrs. Frank's husband told the children to get down and told her to drive through the red light. Due to the cross-traffic, however, Mrs. Franks was not able to drive through the intersection before Appellant fired four shots, one of which struck and killed her five-year-old son, Jamal.

Ms. Walker testified that she was with Appellant and Appellant's half-brother and boyfriend, Randy Allen, at the time of the shooting. She said that she did not realize what was happening until Appellant stopped her car at the red light, got out, and told Allen to give her the gun, which was under Allen's seat. Ms. Walker said that Appellant was not excited or upset at the time, and that she had asked Allen for the gun in a normal tone of voice. Ms. Walker then watched as Appellant approached the back of the Suburban and shot four or five times. When Appellant had finished shooting at the Suburban, Ms. Walker stated that she walked back to the car and said to Allen, "Who's the punk now?" to which Allen replied, "Sister, you ain't no punk." Ms. Walker stated that Appellant and Allen were smiling, like nothing had happened. As they drove away from the scene, Appellant told Allen to get rid of the gun. She also told Ms. Walker not to tell anybody what had happened.

██ The foregoing evidence does not provide a rational basis for instructing the jury on the offense of reckless manslaughter. Nothing in Mrs. Frank's or Ms. Walker's testimony supports the conclusion that Appellant's actions were reckless or that she only intended to scare her estranged husband or damage his Suburban. Indeed, even the testimony presented by defense witnesses concerning prior incidents of violence between Appellant and her husband does not support her argument. What the evidence shows is that Appellant fired a gun four times into a stopped vehicle that she knew was occupied. State's Exhibits 1 and 2 show that the shots were fired into the back of the vehicle, on the driver's side, and that two of the shots entered the vehicle at a level even with the tops of the seats. Jamal, who was seated in the back seat, on the driver's side of the vehicle, was shot in the head. We agree with the State that Appellant's actions went beyond a gross deviation of the standard of care that a reasonable person would observe. Regardless of what her intentions may have been, the evidence shows that her actions were deliberate, not merely reckless. We thus affirm the trial court's refusal to instruct the jury on the offense of reckless manslaughter.

Affirmed.