Patrick BOYLE *v.* STATE of Arkansas

CR 05-77                                      214 S.W.3d 250

Supreme Court of Arkansas
Opinion delivered September 29, 2005

*Jay Saxton* and *Lisa Evans Parks*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

JIM GUNTER, Justice. Appellant Patrick Boyle was convicted of capital murder for shooting his live-in companion, Carol Ivanhoe. Because the State waived the death penalty before trial, Boyle was automatically sentenced to life imprisonment without the possibility of parole. *See* Ark. Code Ann. § 5-10-101(c)(Supp. 2005). Boyle raises four points on appeal: (1) the trial court abused its discretion in refusing to instruct the jury on second-degree murder and manslaughter; (2) the trial court abused its discretion in admitting the testimony of Shannon Bailey; (3) the trial court erred in excluding the testimony of Craig Davis; and (4) the trial court abused its discretion in excluding expert psychiatric testimony. We have reviewed Boyle's claims, find no error, and affirm.

In the early morning hours of March 12, 2002, Boyle shot and killed Carol Ivanhoe. Boyle and Ms. Ivanhoe had lived together for ten years. For several years before her death, Ms.

Ivanhoe had been treated for various health problems that caused her chronic pain. She was admitted to the hospital for four days in January 2003 for severe abdominal and back pain, and was readmitted on February 4, 2003, for the same symptoms. While in the hospital, Ms. Ivanhoe developed pneumonia and was also diagnosed with thyroid storm, a rare condition that can be fatal if left untreated. She was treated for this condition and released on February 18, 2003.

Boyle testified that Ms. Ivanhoe continued to experience great pain after she was released from the hospital, and that he began to work the night shift in order to take care of her during the day. Boyle testified that Ms. Ivanhoe's condition worsened, and that she could not sleep or eat. He decided that she needed to be in the hospital, but knew she would not agree to go, so on March 11, 2003, Boyle took her to the doctor's office, hoping that her doctor would convince her to check herself into the hospital. When they were unable to get an appointment to see Ms. Ivanhoe's doctor, they returned home. Boyle testified that Ms. Ivanhoe continued to moan in her sleep that afternoon and evening, as if she were experiencing great pain. Boyle said that at some point during the night, he got out of bed, walked to Ms. Ivanhoe's nightstand, retrieved her pistol, and shot her twice in the head. He stated that he intentionally killed her because he knew she was going to die, and he did not want her to suffer anymore.

After shooting Ms. Ivanhoe, Boyle went to the kitchen and wrote a suicide note addressed to Ms. Ivanhoe's son, Stanley, who lived in a trailer behind Boyle's house. He then went back in the bedroom and called 911, explaining to the operator that he had shot his wife and was planning on shooting himself. The operator convinced him not to commit suicide. Boyle was later charged with, and convicted by a jury of, capital murder for killing Ms. Ivanhoe.

## I.  Lesser-Included Offenses

■ ■  Boyle's first point on appeal is that the trial court erred in refusing to instruct the jury on the lesser-included offenses of second-degree murder and manslaughter. We have stated repeatedly that it is reversible error to refuse to instruct on a lesser-included offense when there is the slightest evidence to support the instruction. *See, e.g., Flowers v. State,* 362 Ark. 193, 213, 208 S.W.3d 113, 128 (2005); *Morris v. State,* 351 Ark. 426,

430, 94 S.W.3d 913, 915 (2003). However, we will affirm a trial court's decision not to give an instruction on a lesser-included offense if there is no rational basis for giving the instruction. *Id.* Finally, we will not reverse a trial court's ruling regarding the submission of such an instruction absent an abuse of discretion. *Grillot v. State*, 353 Ark. 294, 318, 107 S.W.3d 136, 150 (2003).

We turn first to Boyle's argument that the trial court abused its discretion in refusing to instruct the jury on manslaughter in accordance with Ark. Code Ann. § 5-10-104(a)(1)(Repl. 1997), which states that a person commits manslaughter if

> [h]e causes the death of another person under circumstances that would be murder, except that he causes the death under the influence of extreme emotional disturbance for which there is reasonable excuse. The reasonableness of the excuse shall be determined from the viewpoint of a person in the defendant's situation under the circumstances as he believes them to be[.]

We have held repeatedly that, in order for a jury to be instructed on extreme-emotional-disturbance manslaughter, there must be evidence that the defendant killed the victim in the moment following some kind of provocation, such as "physical fighting, a threat, or a brandished weapon." *Kail v. State*, 341 Ark. 89, 94, 14 S.W.3d 878, 881 (2000); *see also Spann v. State*, 328 Ark. 509, 944 S.W.2d 537 (1997). Passion alone will not reduce a homicide from murder to manslaughter. *Spann*, 328 Ark. at 514, 944 S.W.2d at 540.

In *Kail* we held that the defendant, who was convicted by a jury of capital murder for killing his father-in-law, was not entitled to an instruction on extreme-emotional-disturbance manslaughter where there was no evidence that he killed his father-in-law in the moment following provocation. *Kail, supra.* We stated that

> [d]espite feelings of individuals who are suffering marital discord, the frustration, anger, and resentment that can result fails to constitute, on its own, a rational basis for giving an instruction on voluntary manslaughter. Whether expressed in terms of "heat of passion," (as it was formerly referred) or scientifically defined as "extreme emotional disturbance," *see Rainey*, 310 Ark. at 424, 837 S.W.2d at 456, the instruction requested by the appellant requires a basis in fact indicating that the appellant killed Larry Chappell in the

moment following "provocation in the form of physical fighting, a threat, or a brandished weapon," as we stated in *Spann*.

. . .

The evidence adduced at trial is clear that appellant armed himself, invaded the victim's home, and shot him dead. It is true that his divorce from Mr. Chappell's daughter may have aroused unbalancing passion within the appellant, but absent any provocation, no rational basis existed upon which the trial court could instruct the jury on manslaughter due to extreme emotional disturbance.

*Id.* at 94–95, 14 S.W.3d at 880–81.

■ In spite of his admission that our case law holds otherwise, Boyle contends that proof of extreme emotional disturbance should not require evidence of provocation. While he points to no evidence of extreme emotional disturbance on appeal, either of provocation or anything else, his basis for the instruction in the trial court was his mental state resulting from Ms. Ivanhoe's illness: that is, he was in emotional distress from watching someone he loved suffer. In other words, he seems to be asking this court to establish a "mercy-killing" exception to the provocation requirement for extreme-emotional-disturbance manslaughter.[1] We reject his request. Absent a legally-recognized defense, where a person intentionally causes the death of another, his act constitutes murder, and it is completely irrelevant that the act was motivated by love rather than malice. A humanitarian purpose is neither a defense to murder nor a substitute for the passion and provocation necessary to establish extreme-emotional-disturbance manslaughter.

■ Boyle has offered no evidence of provocation. Indeed, Ms. Ivanhoe was incapable of provoking Boyle as she was asleep when he shot her. Therefore, there was no rational basis for giving the manslaughter instruction. We affirm the trial court's ruling.

■ ■ We now turn to Boyle's argument that the trial court abused its discretion in refusing to give the second-degree

---

[1] We note that the General Assembly has made it clear that Arkansas law does not authorize mercy killings. *See, e.g.,* Ark. Code Ann. § 17-95-704(e)(4)(A) (physicians may not cause or assist in causing the mercy killing of any individual); Ark. Code Ann. § 20-17-210(g) (statute regarding rights of terminally ill does not condone, authorize, or approve of mercy killing).

murder instruction. Because the jury in this case convicted Boyle of capital murder and was instructed on both capital murder and first-degree murder, this claim is barred by the "skip rule." *See, e.g., Fudge v. State*, 341 Ark. 759, 20 S.W.3d 315 (2000); *Branscomb v. State*, 299 Ark. 482, 774 S.W.2d 426 (1989). This rule provides that when an instruction on a lesser-included offense has been given, and the jury convicts of the greater offense, error resulting from the failure to give an instruction on another still lesser-included offense is cured. *Fudge*, 341 Ark. at 767, 20 S.W.3d at 319. In other words, the defendant cannot prove that he was prejudiced by the alleged error, so it was harmless. In this case, the skip rule operates to preclude Boyle's claim with regard to the second-degree-murder instruction.[2]

## II. *Testimony of Shannon Bailey*

Boyle next contends that the trial court abused its discretion in admitting the testimony of Shannon Bailey, a guard at the Benton County detention facility where Boyle was taken after his arrest. Apparently, while Boyle was standing at the booking counter, he overheard Ms. Bailey's conversation with a male deputy in which Ms. Bailey stated that, if the deputy needed a place to stay for a few days, he could stay with her. According to Ms. Bailey, Boyle responded to this statement by smiling at Ms. Bailey and saying, "I'm available." During discovery, the State disclosed this information in Ms. Bailey's report of the event. The report indicated that the conversation took place five days after Boyle's arrest. Just before Ms. Bailey testified, however, the State notified the court and Boyle that the conversation actually took place immediately after Boyle was arrested and brought to the detention facility. Boyle objected to this testimony as irrelevant, prejudicial, and inadmissible hearsay. The trial court allowed the testimony, holding that it was relevant, not unduly prejudicial, and not hearsay, as it was a statement against interest under Ark. R. Evid. 801(d)(2)(i).

Boyle is no longer arguing that the statement was hearsay, but continues to argue that the statement was not relevant to the

---

[2] We note that the skip rule does not preclude Boyle's claim that the manslaughter instruction should have been given, because extreme-emotional-disturbance manslaughter does not fall within the reasoning for the skip rule. *See Rainey v. State*, 310 Ark. 419, 837 S.W.2d 453 (1992).

murder of Carol Ivanhoe and that it was unfairly prejudicial. He claims that the statement was unfairly prejudicial for two reasons: (1) the statement suggests that he was "hitting on" another woman hours after he killed Ms. Ivanhoe; and (2) the State failed to disclose the incorrect date on the report until trial and, had he known before trial that the date was erroneous, he would have prepared differently.

■ Determining the relevancy of evidence and the prejudicial nature of that evidence is within the trial court's discretion, and we will not reverse the trial court's determination absent a manifest abuse of that discretion. *Hinkston v. State*, 340 Ark. 530, 542, 10 S.W.3d 906, 914 (2000). We see no such abuse here. Boyle has never denied shooting Ms. Ivanhoe twice in the head, killing her. He has argued instead that his act did not constitute murder because he shot her to end her suffering. The evidence was relevant to support the State's theory suggesting otherwise. At trial, the State maintained that Boyle shot Ms. Ivanhoe to free himself from the burden of caring for her and their household. Ms. Bailey's testimony suggested that Boyle's state of mind hours after the murder was not one of grief, as Boyle contended, but of relief. His statement to Ms. Bailey indicated that he felt free and available.

■ "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" Ark. R. Evid. 403 (2005). The operative word in Rule 403 is "unfair." The fact that the evidence is harmful, or prejudicial, to one side or the other does not cause it to be inadmissible. In this case, its high probative value is the very reason Boyle is claiming that the evidence is prejudicial. We agree that Ms. Bailey's testimony — suggesting that Boyle was flirting with her hours after the death of Ms. Ivanhoe — was harmful to Boyle's argument that he killed Ms. Ivanhoe to relieve her suffering and not to relieve his own. The question is whether the probative value of the evidence was substantially outweighed by the danger of "unfair" prejudice. The trial court held that it was not. We hold that the trial court did not abuse its discretion.

■ With regard to Boyle's claim that the State's failure to disclose the incorrect date on Ms. Bailey's report until trial prejudiced him, we note that Boyle did not raise this argument below. Indeed, he gives no explanation to us as to how he would have prepared differently. It is blackletter law that a party cannot

change his grounds for an objection on appeal and is bound by the scope and nature of the arguments that he made at trial. *Henderson v. State*, 329 Ark. 526, 531, 953 S.W.2d 26, 28 (1997)(citing *Evans v. State*, 326 Ark. 279, 931 S.W.2d 136 (1996)). Therefore, we do not address this argument.

### III. Testimony of Craig Davis

Boyle's next argument is that the trial court erred in excluding the testimony of Craig Davis, a friend of Boyle. Davis would have testified that Ms. Ivanhoe told him in a telephone conversation while she was in the hospital that her pain was getting worse and she did not know how much longer she could put up with it. Boyle overheard the conversation while in the hospital room with Ms. Ivanhoe. Boyle claimed at trial that Mr. Davis's testimony was not hearsay because it was not offered for the truth of the matter asserted, but to show its effect on him, the listener. The court excluded the testimony, holding that the importance of this conversation was that Boyle heard it and its impact upon him. The court stated that what Mr. Davis thinks he heard was not important. Because Boyle had already testified about the conversation and its impact upon him, the trial court excluded Mr. Davis's testimony.

We will not reverse a ruling on the admissibility of evidence absent an abuse of discretion, as such matters are left to the sound discretion of the trial court. *Bankston v. State*, 361 Ark. 123, 130, 205 S.W.3d 138, 143 (2005). While we agree with Boyle that Davis's proposed testimony was not hearsay, the trial court did not indicate that it excluded the testimony on the basis of hearsay. The trial court appeared to conclude that Davis's testimony was cumulative, and that the best evidence of this conversation had already been admitted through Boyle. Therefore, even if the exclusion was error, it was harmless. *See Morgan v. State*, 333 Ark. 294, 971 S.W.2d 219 (1998)(holding that evidentiary error is harmless if the same or similar evidence was otherwise introduced); *accord Jones v. State*, 326 Ark. 61, 931 S.W.2d 83 (1996). Accordingly, the trial court did not abuse its discretion in refusing to admit Mr. Davis's testimony into evidence.

### IV. Testimony of Dr. Walz

We turn finally to Boyle's argument that the trial court abused its discretion by excluding the testimony of Dr. Patricia

Walz.[3] In her proffered testimony, Dr. Walz opined that Boyle was exhausted and had some confusion on the night he killed Ms. Ivanhoe and that he suffered from various physical ailments and memory loss. Boyle argues that the State opened the door to his state of mind by offering the testimony of Shannon Bailey, who testified that Boyle told her he was "available" hours after Ms. Ivanhoe's death. He argues that Dr. Walz should have been allowed to state her opinion of his mental state to rebut the state's characterization of his mental state through Ms. Bailey's testimony.

First, we note that Dr. Walz specifically stated in her proffered cross-examination testimony that she was not familiar with anything Boyle may have said to a booking deputy, Ms. Bailey. Furthermore, Boyle testified at trial in his own defense and had ample opportunity to explain his state of mind when he spoke to Ms. Bailey. He explained his state of mind, stating that he "[could] not remember that at all." Dr. Walz's testimony was irrelevant to rebut Ms. Bailey's testimony and, therefore, the trial court did not abuse its discretion in excluding it on that basis.

Finally, the evidence of physical ailments, sleep deprivation, confusion, and memory loss had already been introduced through other witnesses, including Boyle's treating physician and the officer who interrogated Boyle after his arrest. Therefore, Dr. Walz's opinion on Boyle's physical condition, which was obtained by reviewing the reports of the principal witnesses on these issues, was cumulative at best. While it is unclear from Boyle's argument whether he intended Dr. Walz to provide her opinion on his mental condition at the time of the murder, we hold such an opinion was inadmissible in this case. Boyle did not assert the insanity defense, and he has offered no other valid basis for admitting Dr. Walz's opinion. *Hinkston v. State*, 340 Ark. 530, 10 S.W.3d 906 (2000) (held that expert testimony regarding a defendant's inability to conform his conduct to the requirements of the law because of mental disease or defect is not admissible where the defendant is not asserting the insanity defense); *Stewart v. State*, 316 Ark. 153, 870 S.W.2d 752 (1994) (held that expert testimony on the ability of a defendant to form specific intent to murder is not

---

[3] *Hinkston v. State*, 340 Ark. 530, 10 S.W.3d 906 (2000) (we review rulings regarding the admissibility of expert testimony for abuse of discretion).

admissible). We hold that the trial court did not abuse its discretion in excluding Dr. Walz's testimony.

## V. Rule 4-3(h) Review

The record in this case has been reviewed for other reversible error pursuant to Rule 4-3(h) of the Rules of the Supreme Court, and no error has been found.

Affirmed.

BROWN, J., concurring in part; dissenting in part.

ROBERT L. BROWN, Justice, concurring. One of the overarching principles in criminal jurisprudence is that if evidence, albeit slight, and a rational basis warrant that an instruction of law be given to the jury, it must be given. *See, e.g., Flowers v. State*, 362 Ark. 193, 208 S.W.3d 113 (2005); *Harshaw v. State*, 344 Ark. 129, 39 S.W.3d 753 (2001). This principle is sacrosanct.

The majority, however, stands this principle on its head and relies solely on a harmless-error analysis to justify the failure to give the second-degree murder instruction. Because I do not believe that harmless error, by itself, can support the failure to give an instruction that the evidence supports, I dissent from this reasoning.

The majority invokes the "skip rule" for its harmless-error analysis. What that rule means in this context is that because the jury found Boyle guilty of capital murder, it was not prejudicial to refuse to give a second-degree murder instruction. In other words, because the jury found Boyle guilty of an offense two degrees higher than second-degree murder and "skipped" first-degree murder, for which an instruction was given, no prejudice to Boyle resulted.

Of course, this is artificial, post-verdict rationalization. What the "skip rule" does not acknowledge is that the failure to instruct on an offense supported by the evidence and forbidding defense counsel to argue that offense to the jury deprives the defendant of an argument to which he is entitled. That is because an instruction on a lesser-included offense is appropriate when it is supported by even the *slightest* evidence. *See Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003). It is only when there is no rational basis for giving the instruction that this court will affirm a circuit court's exclusion of an instruction on a lesser-included

offense. *See Brown v. State*, 347 Ark. 44, 60 S.W.3d 422 (2001). Had the jury been instructed on second-degree murder and had defense counsel been allowed to argue it to the jury, the jury's verdict may have been altogether different.

This court cited the "skip rule" as an alternative ground for affirmance in recent cases, where we also said there was no evidence to support giving the instruction and, thus, no rational basis for it. *See Flowers v. State, supra; Fudge v. State*, 341 Ark. 759, 205 S.W.3d 315 (2000). That is certainly the way the State of Kansas has proceeded. *See Kansas v. Robertson*, 279 Kan. 291, 109 P.3d 1174 (2005). In the instant case, however, the majority hinges its opinion entirely on the "skip rule." That is wrong, in my opinion.

In sum, I dissent from this reasoning. But because I believe the *evidence* does not support a second-degree murder instruction, I concur in the result.