Michael CATLETT *v.* STATE of Arkansas

CR 95-10                                         900 S.W.2d 523

Supreme Court of Arkansas
Opinion delivered June 12, 1995
[Rehearing denied July 17, 1995.]

*Joseph M. Nursey* and *Timothy O. Dudley*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Deputy Att'y Gen., Senior App. Advoc., for appellee.

Robert H. Dudley, Justice. On October 1, 1993, appellant Michael Catlett trailed Stephanie Jungkind's car from the Pizza D'Action cafe in the Hillcrest section of Little Rock to the Rodney Parham exit on Interstate 630, pulled up beside her, reached out his car window, fired a semi-automatic pistol into her car, freed the jammed pistol, and fired again. The shots struck and killed Ms. Jungkind. At trial, appellant did not deny the foregoing facts. Rather, he argued that his mental illness rendered him incapable of forming the intent required for murder and, in addition, asserted the affirmative defense of not guilty by reason of mental disease or defect.

Appellant has a long history of mental illness that culminated in months of obsessive behavior toward Ms. Jungkind. Appellant and the victim had dated, lived together, and were engaged to be married before Ms. Jungkind terminated their relationship. After their breakup, appellant stalked Ms. Jungkind at her home, at friends' and relatives' homes, at her place of employment, and at public places. The content of his numerous phone calls to her ranged from pleading with her to come back, insulting and threatening her, making peculiar animal-like noises, and hanging up the moment she answered. Just before he killed Ms. Jungkind, appellant spray-painted bizarre graffiti on the parking lots of Riverfront Park and of the law firm where she was employed.

Appellant's first suicide attempt occurred at age eighteen. He was subsequently placed in a series of psychiatric hospitals and was involuntarily committed to the Arkansas State Hospital in 1992 and again in 1993. He was diagnosed as having bipolar affective (manic-depressive) disorder and suffered from various paranoid delusions.

The only seriously contested issues at trial involved appellant's mental condition at the time of the murder. The State's evidence of premeditation showed that appellant had (1) attempted to purchase a gun from a pawn shop by falsifying a federal firearms form; (2) purchased a semi-automatic pistol three days before the murder; (3) visited a travel agency and possibly purchased an airline ticket two weeks before the murder; (4) stated that he hated Ms. Jungkind and that a manic-depressive person could murder someone and get away with it; (5) stated that he was going to kill Ms. Jungkind; and (6) was served with an order of protection two days before the murder and was scheduled to appear at a hearing three days after the murder. The jury found that the State proved beyond a reasonable doubt that appellant acted with a premeditated and deliberated purpose and that appellant did not prove his affirmative defense of mental disease or defect by a preponderance of the evidence. Appellant was convicted of capital murder and was sentenced to life imprisonment without parole. We affirm the judgment of conviction.

Appellant's initial point of appeal is that the trial court erred in refusing to sustain an objection to a part of the deputy prosecutor's closing argument. The deputy prosecutor, in arguing against appellant's affirmative defense, said:

> If you have found that the State has proven that Michael Catlett has committed an offense, then and only then after you've decided what he has committed, do you pick up that affirmative defense [of mental disease or defect]. Because if you don't find him guilty, you don't even need to consider it. He's just plain not guilty. But if you have found him guilty, you pick up that affirmative defense.

Appellant objected to the argument on the ground that the applicable instruction, AMI Crim. 2d 609, provides that the jury must find that appellant "engaged in the conduct alleged to con-

stitute the offense charged" and not that it must find appellant guilty before determining whether he proved the affirmative defense. The trial court overruled the objection.

Before taking up the issue of the deputy prosecutor's statement, we examine the full text of the State's argument. It addresses both of appellant's contentions. Appellant asserted two defenses, a "failure of proof" defense and an "excuse" defense. He contended that because of his mental illness he was incapable of forming the requisite intent to commit capital murder and the State was required to prove that intent beyond a reasonable doubt. Section 5-2-303 of the Arkansas Code Annotated provides: "Evidence that the defendant suffered from a mental disease or defect is admissible to prove whether he had the kind of culpable mental state required for commission of the offense charged." Ark. Code Ann. § 5-2-303 (Repl. 1993). Appellant argued at trial that he should be acquitted because he could not form a "premeditated and deliberated purpose," the required element for a capital murder conviction. *See* Ark. Code Ann. § 5-10-101(a)(4). Appellant's contention that the State failed to prove intent to commit murder beyond a reasonable doubt was a "failure of proof defense."

Appellant also contended that he should be acquitted because of his affirmative defense. An affirmative defense is a general defense which bars conviction even if all the elements of the offense are proven beyond a reasonable doubt. Lack of capacity is an "excuse" defense in which the defendant does not deny that his conduct was wrong, but argues that he is excused from that wrongful conduct because he lacked the capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. Ark. Code Ann. § 5-2-312(a). In asserting the affirmative defense, appellant contended that he lacked the ability to control his conduct to the extent that he should not be held accountable for it.

With the context set out, we now address the point of appeal. In the first sentence of the statement, the deputy prosecutor argued that if the jury found that appellant "has committed an offense, then and only then after you've decided what he has committed, do you pick up that affirmative defense." Under the applicable model instruction, AMI Crim. 2d 609, the jury must find that

appellant "engaged in conduct alleged to constitute the offense charged," as distinguished from the deputy prosecutor's statement that it must find "appellant committed an offense." However, when viewed in context of the State's argument, it is obvious that the statement was a reference to the sequence in which the jurors consider the "failure of proof" defense and the "excuse," or affirmative, defense, and in this regard the difference is metaphysical.

The second and third sentences in the deputy prosecutor's statement were entirely correct. They were: "Because if you don't find him guilty, you don't even need to consider it. He's just plain not guilty." Again, the framework of the sentences is to show the sequence in which the jurors are to consider the affirmative defense.

The third sentence in the statement was: "But if you have found him guilty, you pick up that affirmative defense." Appellant argues that this part of the statement was misleading and prejudicial because it required the jury to first find appellant was "guilty," and then, if they found he had proved his affirmative defense, find him "unguilty." Again, the statement concerned the two related defenses by appellant, and the sequence in which they were to be considered.

Certainly, if the prosecutor had argued that none of the insanity evidence could be considered *for any purpose* unless the jury found that all of the elements of the offense had been proved, or that appellant had been found guilty, it would have been an incorrect and misleading statement of the law. However, that was not the argument. The deputy prosecutor was referring solely to the jury's consideration of the evidence as an affirmative defense and was referring to the sequence in which they should consider the affirmative defense. It was with this predicate that the deputy prosecutor said, "but if you have found him guilty, you pick up that affirmative defense." The statement, taken in full context with the other statements, meant that, even though the jurors might find the State proved beyond a reasonable doubt that appellant had the requisite mental culpability to commit a crime, they were then to determine whether he could conform his conduct to the requirements of the law. Appellant was not prejudiced by the deputy prosecutor's statement.

Appellant next argues that the trial court erred in allowing the State to prove that appellant made preparations to flee. The facts underlying the argument are as follows. Prior to trial, appellant moved to exclude the testimony of Amy Thompson, who would supposedly testify that appellant had visited a travel agency the day before the murder and had possibly purchased an airline ticket, and to exclude the testimony of Rita Hawkins, who would supposedly testify that she rode with appellant to the travel agency "several days before the murder." Appellant argued at trial that neither witness could say whether appellant purchased a plane ticket and therefore, their testimony should be excluded. The State proffered Ms. Thompson's testimony, and the court deemed it inadmissible because Ms. Thompson's recollection of the event was so poor. The deputy prosecutor then told the court that the State would rely solely on the testimony of Rita Hawkins, the witness who went with appellant to the travel agency "the day before the murder." Appellant argued that her testimony should be excluded because she did not go into the travel agency with him and that she did not know what was in the envelope he brought out of the travel agency. The trial court refused to exclude the evidence, ruling that there was a reasonable inference that appellant could have purchased a ticket and that the event was "close enough in time to the offense" to be relevant.

At trial, Ms. Hawkins testified that she did not know exactly when she and appellant went to the travel agency, that it was "maybe two weeks relative to Michelle's shooting." She testified that she did not go into the travel agency with appellant, but when appellant returned to the car, he had an envelope in his hand.

On appeal, appellant argues that the time factor made the evidence more prejudicial than probative. However, that argument was not made below. Appellant argued below that the evidence should be excluded because Ms. Hawkins could not say that appellant purchased a travel ticket. It is well settled that a party cannot change his grounds for objection on appeal. *Walker* v. *State*, 301 Ark. 218, 783 S.W.2d 44 (1990).

Appellant next argues that the trial court erred in charging the jury, but this argument is procedurally barred because trial counsel neither objected to the instructions given nor did he offer his own instructions. *Watson* v. *State*, 313 Ark. 304, 854 S.W.2d

332 (1993); *Nichols* v. *State*, 306 Ark. 417, 815 S.W.2d 382 (1991). In fact, the record reveals that trial counsel offered one of the instructions about which appellate counsel now complains.

An examination of the record has been made in accordance with Ark. Sup. Ct. R. 4-3(h), and we have determined that there were no rulings adverse to appellant that constituted prejudicial error.

Affirmed.