
# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-16-386

| | |
|---|---|
| | **Opinion Delivered** December 14, 2016 |
| WILLIAM LAMAR BROWN<br>APPELLANT | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35CR-13-197-2] |
| V. | |
| STATE OF ARKANSAS | HONORABLE ROBERT H. WYATT, JR., JUDGE |
| APPELLEE | REVERSED AND REMANDED |

## LARRY D. VAUGHT, Judge

William Lamar Brown was convicted by a Jefferson County jury of kidnapping (two counts), second-degree battery, and second-degree escape. He was sentenced to twenty years' imprisonment for each kidnapping conviction, six years' imprisonment for the battery conviction, and five years' imprisonment for the escape conviction.[1] Brown appeals the sentencing order, arguing that the circuit court abused its discretion in excluding lay-witness testimony concerning his history of mental disease, which he claims is relevant to the issue of his culpable mental state. We agree and reverse and remand.

On April 3, 2013, the State filed an information alleging that on February 21, 2013, Brown committed second-degree escape, two counts of first-degree false imprisonment, two counts of first-degree terroristic threatening, second-degree battery, two counts of aggravated

---

[1]The court ordered the kidnapping and battery sentences to run concurrently and the escape sentence to run consecutively to the kidnapping and battery sentences.

assault, and threatening a fire or bombing. After several amendments, the third amended information charged Brown with second-degree escape, two counts of first-degree terroristic threatening, second-degree battery, and two counts of kidnapping.

On April 5, 2013, the State moved that Brown be committed to determine whether he lacked capacity, due to mental disease or defect, at the time of the alleged occurrence to conform his conduct to the requirements of the law or to appreciate the criminality of his conduct and to determine whether he lacked the capacity to understand the proceedings against him or to assist effectively in his own defense. The circuit court granted the State's motion, and a forensic evaluation was conducted by Dr. William A. Cochran of Southeast Arkansas Behavioral Healthcare, Inc., on May 16, 2013.

Dr. Cochran reported that Brown suffered from psychotic disorder and antisocial-personality disorder; had been off his medication; and had been very disruptive during the evaluation and often "rambled incoherently." Dr. Cochran opined that Brown lacked the capacity to understand the proceedings against him and the capacity to effectively assist in his own defense. Due to Brown's condition at the evaluation, Dr. Cochran was unable to determine whether, at the time of the offenses, Brown had the capacity to appreciate the criminality of his conduct or to form the culpable mental state required to be convicted of the offenses for which he had been charged.

The circuit court, on June 19, 2013, entered an order that suspended the criminal proceedings against Brown and that committed him to the Arkansas State Hospital until his competency to stand trial could be restored. While committed, Brown received treatment for his mental disease, and in August 2013, he was able to participate in an evaluation by Ben

Hendrickson, a psychology intern at the Arkansas State Hospital.[2] Hendrickson concluded that, at the time of his evaluation, Brown suffered from mental disease, schizophrenia, yet he had the capacity to understand the criminal proceedings against him and assist in his defense. Hendrickson also opined that Brown, at the time of the offenses, suffered from mental disease, yet he had the capacity to appreciate the criminality of his conduct and to form the requisite culpable mental state to be convicted of the offenses for which he had been charged.

On March 5, 2014, Brown filed a motion for completion of the forensic evaluation. The circuit court granted the motion, and Dr. Cochran reevaluated Brown on May 29, 2014. Dr. Cochran reached the same conclusions as Hendrickson.

A fourth and final forensic evaluation was conducted at the Arkansas State Hospital on June 4, 2015, by Dr. Peacock and Kaley Raskin, a postdoctoral fellow in forensic psychology. They concluded that, at the time of their evaluation, Brown suffered from mental disease—schizophrenia, multiple episodes, currently in partial remission—and he had the capacity to understand the criminal proceedings against him and assist in his defense. Dr. Peacock and Raskin also opined that Brown, at the time of the offenses, suffered from mental disease but that he had the capacity to appreciate the criminality of his conduct and to form the requisite culpable mental state to be convicted of the offenses for which he had been charged.

---

[2]Hendrickson was supervised by Dr. Mark Peacock, an assistant clinical professor at UAMS and director of a postdoctoral fellowship in forensic psychology at the Arkansas State Hospital.

At a December 2015 competency hearing, Dr. Peacock reiterated the opinions in his June 2015 report and testified that Brown was competent to stand trial. The circuit court found Brown competent to stand trial.

At trial, the State presented multiple witnesses who testified that on February 21, 2013, Brown entered Comprehensive Care, a walk-in medical clinic, and was ushered into an examination room, where a nurse, Phyllis Martin, and a nurse practitioner, Karen McPherson, planned to treat him for a groin abscess. When in the exam room, Brown brandished a gun and explosives, pointed the gun at the women, and ordered McPherson to call the front desk and ask that they not be bothered. For approximately forty-five minutes, the women were trapped in the exam room with Brown, during which time he made multiple threats to kill the women, he beat Martin, and he cut off McPherson's hair. Eventually, the police entered the room and took Brown into custody. The officers determined that the gun was a toy painted black, and the explosives were a dough-like substance. While he was in police custody, officers removed Brown's handcuffs to remove his jacket, at which time Brown escaped. He was quickly apprehended.

Brown testified at trial. He stated that he went to the medical clinic on February 21, 2013, seeking a cure for schizophrenia and headaches. He said that he had been diagnosed with schizophrenia in 2009 and the diagnosis changed his life. He said that he had tried to commit suicide in the past to save his sister's life and that he had been admitted to a hospital for treatment. This testimony drew a relevance objection from the State. In response, Brown's counsel argued that evidence of Brown's mental disease was relevant and admissible under Arkansas Code Annotated section 5-2-303, which permits such evidence on the issue of

whether Brown had the culpable mental state required for the commission of the offenses charged. The State countered that the evidence of Brown's schizophrenia was irrelevant because he had not raised the affirmative defense of mental disease or defect.

The circuit court ruled that section 5-2-303 applied only after a defendant had pled the affirmative defense of mental disease or defect, which Brown had not pled.[3] The court sustained the State's objection and excluded the evidence. Counsel for Brown proffered evidence that he, his mother, and his friend would have testified about his history with schizophrenia dating back to 2009, his treatment for the mental disease, and how schizophrenia led to the February 21, 2013 incident. The court also instructed the jury to disregard Brown's testimony about his schizophrenic episodes. Thereafter, Brown testified that he committed the offenses alleged by the State, apologizing for what he did to Martin and McPherson. The jury found Brown guilty of two counts of kidnapping, second-degree battery, and second-degree escape.[4]

During the sentencing phase, Brown's mother and his friend testified that Brown had been diagnosed as a schizophrenic in 2009 and that the diagnosis explained significant changes in his personality. Brown's mother stated that he had been in search of help for his mental disease when the incident had occurred. The jury was unable to come to an agreement on

---

[3]After the circuit court sustained the State's objection to evidence of Brown's schizophrenia, counsel for Brown raised the affirmative defense based on mental disease or defect. The court denied the request, finding it was untimely, and Brown does not challenge this ruling on appeal.

[4]The aggravated-assault and threatening-a-fire-or-bombing charges had previously been nolle prossed by the State, and the terroristic-threatening charges were dismissed by the State during the jury's deliberation.

sentencing, and the circuit court imposed the sentences. The circuit court's sentencing order was entered on February 9, 2016, and this appeal followed. Brown argues that the circuit court abused its discretion in excluding his testimony, along with that of his mother and his friend, about his mental disease—schizophrenia. He argues that this evidence is relevant on the issue of whether he had been able to form the culpable mental state to commit the charges for which he was convicted.

The decision to admit or exclude evidence is within the sound discretion of the circuit court, and we will not reverse that decision absent a manifest abuse of discretion. *Bruner v. State*, 2013 Ark. 68, at 11, 426 S.W.3d 386, 393. The abuse-of-discretion standard "is a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court act improvidently, thoughtlessly, or without due consideration." *Id.* at 11–12, 426 S.W.3d at 393. Nor will we reverse absent a showing of prejudice. *Id.* at 12, 426 S.W.3d at 393.

Brown's appeal highlights the distinction between two different defenses—a "failure of proof" defense and an "excuse" defense. *Catlett v. State*, 321 Ark. 1, 4, 900 S.W.2d 523, 524 (1995). The "excuse" defense is raised when a defendant argues he should be acquitted because of his affirmative defense. *Id.*, 900 S.W.2d at 524. An affirmative defense is a general defense which bars conviction even if all the elements of the offense are proven beyond a reasonable doubt. *Id.*, 900 S.W.2d at 524–25. Lack of capacity is an "excuse" defense in which the defendant does not deny that his conduct was wrong, but he argues that he is excused from that wrongful conduct because he lacked the capacity either to appreciate the criminality of

his conduct or to conform his conduct to the requirements of the law. *Id.*, 900 S.W.2d at 525 (citing Ark. Code Ann. § 5-2-312(a)).

Brown's appeal focuses on the "failure of proof" defense, wherein a defendant contends that because of his mental defect or illness he was incapable of forming the requisite intent to commit the crimes charged and that the State failed to prove that intent beyond a reasonable doubt. *Catlett*, 321 Ark. at 4, 900 S.W.2d at 524. For support, he cites Arkansas Code Annotated section 5-2-303 (Repl. 2013), which provides, "Evidence that the defendant suffered from a mental disease or defect is admissible to prove whether the defendant had the kind of culpable mental state required for commission of the offense charged." Brown argues that, pursuant to section 5-2-303, he should have been permitted to introduce evidence of his schizophrenia to establish that he could not form the intent to purposely commit second-degree battery or kidnapping.[5] He further contends he was not required to raise the defense of mental disease or defect in order to introduce this evidence. Finally, he argues that *Graham v. State*, 290 Ark. 107, 717 S.W.2d 203 (1986), is directly on point and demands reversal of his convictions.

In *Graham*, the defendant was charged with aggravated robbery and being a felon in possession of a firearm. 290 Ark. at 109, 717 S.W.2d at 204. At trial, the circuit court excluded lay-witness testimony from the defendant's mother and grandmother about his mental and emotional condition,[6] and the defendant was convicted of the charges. On appeal, Graham

---

[5]Arkansas Code Annotated sections 5-13-202(a)(1) (Supp. 2015) (second-degree battery) and 5-11-102(a) (Repl. 2013) (kidnapping) require purposeful intent.

[6]The excluded lay-witness testimony was that the defendant "goes to pieces" under pressure. *Graham*, 290 Ark. at 110, 717 S.W.2d at 204.

argued that the court erred in excluding the evidence of his mental condition because it was relevant on the issue of his culpable mental state. Our supreme court agreed, stating that

> [i]n the present circumstances purposeful intent is an essential element of the aggravated robbery. A witness may give a non-expert opinion on matters rationally based upon his perception if it is helpful to a clear understanding of his testimony or the determination of a fact issue. A.R.E. 701. Furthermore, evidence of mental disease or defect is admissible to prove whether the accused had the kind of mental state required for commission of the offense charged under Ark. Stat. Ann. § 41-602 (Repl. 1977).[7] We therefore hold that it was prejudicial error to refuse to allow the appellant's mother and grandmother to testify during the guilt-innocence phase of the trial.

*Graham*, 290 Ark. at 110, 717 S.W.2d at 204.

More recently, in *Bruner v. State*, 2013 Ark. 68, 426 S.W.3d 386, the Arkansas Supreme Court reiterated its holding in *Graham*. In *Bruner*, the circuit court excluded expert-opinion psychological reports concerning the low intellectual functioning of the defendants finding that they were not relevant to show that the defendants lacked ability to form the requisite mental state to commit battery where they did not raise the affirmative defense of mental disease or defect. *Bruner*, 2013 Ark. 68, at 10–11, 426 S.W.3d at 392. The supreme court stated,

> With reference to [section 5-2-303], in *Graham, supra*, we found reversible error in the circuit court's exclusion of lay testimony that Graham "goes to pieces" under pressure. *Graham*, 290 Ark. at 110, 717 S.W.2d at 204. We held that evidence of Graham's mental condition, "[e]ven if it did not show mental disease or defect sufficient to constitute a defense," was relevant on the issue of Graham's culpable mental state. *Id.* at 110, 717 S.W.2d at 204. Noting that lay testimony, given a proper foundation, was admissible on the accused's mental and emotional condition, we held that it was prejudicial error to exclude the testimony.

---

[7]Ark. Stat. Ann. § 41-602 (Repl. 1997) is the predecessor to Arkansas Code Annotated section 5-2-303.

*Bruner*, 2013 Ark. 68, at 12, 426 S.W.3d 386, 393 (internal citation omitted). After citing *Graham* with approval, the supreme court proceeded to distinguish it from the facts in *Bruner*, noting that the defendants in *Bruner* were seeking to introduce expert-witness evidence of their mental condition on the issue of whether they had the ability to form the specific intent necessary to commit the charged offense, which is not admissible. *Id.*, 426 S.W.3d at 393 (citing *Stewart v. State*, 316 Ark. 153, 160, 870 S.W.2d 752, 756 (1994)). In contrast, the defendant in *Graham* sought to introduce evidence of lay-witness testimony of his mental disease to establish that he was not able to form the culpable mental state. The distinction is further highlighted in *Stewart*, where the supreme court stated that

> [a] general inability to conform one's conduct to the requirements of the law due to mental defect or illness is the gauge for insanity. It is different from whether the defendant had the specific intent to kill another individual at a particular time. Whether Stewart was insane certainly is a matter for expert opinion. Whether he had the required intent to murder Ragland at that particular time was for the jury to decide.

316 Ark. at 159, 870 S.W.2d at 755.

Based on section 5-2-303 and *Graham*, we hold that the circuit court abused its discretion in excluding the proffered testimony of Brown, his mother, and his friend about his mental disease. The State was required to prove, beyond a reasonable doubt, that Brown *purposely* kidnapped and battered his victims. Brown's "failure of proof" defense sought to introduce evidence of his mental disease, which was directly relevant on that issue—whether he formed that culpable mental state. Section 5-2-303 specifically provides that evidence of Brown's mental disease was admissible to prove whether he had the kind of culpable mental state required for commission of the offenses for which he had been charged. And in *Graham*, our supreme court held that it was error to exclude lay-witness testimony of mental disease or

defect where "purposeful intent" was a fact question for the jury on the essential element of the crime charged. Accordingly, we hold that the circuit court abused its discretion in excluding evidence of Brown's mental disease.

We will not reverse absent a showing of prejudice. *Bruner*, 2013 Ark. 68, at 12, 426 S.W.3d at 393. Brown suffered prejudice as a result of the circuit court's exclusion of evidence of his mental disease. His entire defense was based on the excluded evidence. Once it was ruled inadmissible, the sum of Brown's testimony was his concession that he committed the offenses and his apologies to his victims. For these reasons, we hold that the circuit court abused its discretion in excluding the proffered evidence of Brown's mental disease. Accordingly, we reverse and remand.

Reversed and remanded.

GLADWIN, C.J., and HARRISON, J., agree.

*Robinson & Zakrzewski, P.A.*, by: *Luke Zakrzewski*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.