KAREN R. BAKER, Associate Justice
Appellant Courtney Jerrel Douglas appeals the denial of his petition for postconviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure. Douglas was convicted of first-degree murder and possession of a firearm and was sentenced to a term of life imprisonment for his murder conviction plus an additional fifteen years' imprisonment for the use of a firearm. For his possession-of-a-firearm charge, Douglas was sentenced to forty years' imprisonment and a fine of $ 15,000. Douglas's probation was also revoked on three controlled-substance offenses, and he was sentenced to a total of fifty years' imprisonment to be served consecutively to his other sentences. Douglas's convictions and sentences were affirmed in Douglas v. State , 2017 Ark. 70, 511 S.W.3d 852 ( Douglas I ). In Douglas v. State , 2018 Ark. 89, 540 S.W.3d 685 ( Douglas II ), Douglas appealed the denial of his petition for postconviction relief under Rule 37. The following facts relevant to the present appeal were set out in Douglas II :
Douglas's convictions and sentences stem from an altercation between the victim, Terrance Billings, and Douglas. On August 5, 2015, Douglas and Billings got into a verbal altercation at Douglas's home. After the altercation, Billings returned to his home. After Billings had left to go home, Douglas retrieved a firearm and drove to Billings's home. Jennifer Henry, Billings's girlfriend, testified that Douglas came to their home uninvited, and when she answered the door, "[Billings] pushed [Douglas] back outside the door and turned back around. I heard the gunshot. Then [Douglas] came and finished shooting inside the house where [Billings] fell on the floor and died. [Douglas] still stood there and shot when there wasn't no more bullets in the gun ... I kept hearing the gun clicking." D.H., Jennifer's fourteen-year-old son, testified that when Douglas came to their home, he witnessed Billings and Douglas as they "tussled" on the porch. D.H. further testified that Billings was inside the home when Douglas began shooting Billings. John Henry, Jennifer's father, testified that he witnessed Douglas and Billings scuffling on the porch as well. John further testified that it looked like Billings had Douglas in a headlock and Jennifer was standing behind them. Sergeant Jim Sanders with the Union County Sheriff's Office testified that upon arriving at the crime scene, it was his duty to immediately begin taking photographs. Sergeant Sanders testified that there did not appear to be any blood, tissue, or other bodily fluids on the porch or door. However, inside the threshold, but not on the threshold itself, there appeared to be bodily fluid. Further, Sergeant Sanders testified that there was no indication that Billings's body had been moved. Chief Investigator Ricky Roberts, also with the Union County Sheriff's *487 Office, testified that there was no indication of blood on the porch, and based on the evidence, it was apparent that Billings was shot while standing inside the house.
2018 Ark. 89, at 2-3, 540 S.W.3d 685, 687.
In his petition for postconviction relief, Douglas argued that his trial counsel was ineffective in failing to present the proper jury instructions on (1) justification and (2) extreme-emotional-disturbance manslaughter. In Douglas II , we affirmed in part and reversed and remanded in part. Specifically, we affirmed the circuit court's denial of postconviction relief with regard to the justification jury instruction. However, as to the extreme-emotional-disturbance-manslaughter jury instruction, we held that the circuit court failed to make written findings in accordance with Rule 37.3(a) of the Arkansas Rules of Criminal Procedure. Accordingly, we reversed and remanded for written findings in compliance with Rule 37.3(a). On April 6, 2018, the circuit court entered its written order denying Douglas's petition without a hearing:
Concerning the alleged failure of trial counsel to request or proffer the jury charges pertaining to manslaughter under extreme emotional disturbance, the Court finds that there was lacking any reasonable or rational basis for so instructing the jury under the testimony presented at the trial of this cause. The proof was undisputed that defendant and the victim had a verbal confrontation at defendant's home at which time defendant armed himself with a handgun which he retrieved from a dresser drawer in a bedroom of his home. Any threat to defendant's person had fully concluded. The victim returned to his home and relaxed himself on a sofa, with his pregnant girlfriend inside and her minor son standing in the yard. Defendant, then armed and angry, drove to the victim's home and stormed onto the porch, calling out the victim. As found by the Supreme Court in affirming point one of the Petition, the victim who was unarmed was entitled to defend his home and premises by pushing the defendant away from the entrance doorway. Rather than retreat as required under A.C.A. 5-2-607, defendant then brandished his handgun and fired multiple shots into the victim, who was standing inside the doorway of his home, which gunshots resulted in his death. Defendant failed to retreat and he was the aggressor in this new physical confrontation on the premises occupied by the victim. It is not disputed that the victim was not armed or otherwise is possession of any weapon, deadly or otherwise. Defendant utilized such excessive force, i.e. deadly force, against such unarmed victim, in shooting the victim numerous times with the handgun as the aggressor in this murder. In overcoming the defendant's present claim, the Court finds, and it is critical to emphasize, that the undisputed proof is the initial confrontation had ended and the victim had removed himself completely from defendant's premises. The Court finds that "armed and angry" under the facts of this case does not constitute "extreme emotional disturbance."
....
As set out above there is no prejudice arising out of this allegation inasmuch as the record is absolutely devoid of any factual basis upon which there existed any basis, rational or otherwise (except mere conjecture), which may have warranted that the Court instruct the jury on the lesser offense. The right to have the jury instructed on lesser included offenses is not a fundamental right that gives a basis for relief when raised for the first time in a Rule 37.
*488 Kennedy v. State , 338 Ark. 125, 991 S.W.2d 606 (1999). The defendant did not testify at trial. The voluntary statement of defendant to law enforcement, which was heard by the jury, did not create any factual or legal scenario which would have supported the giving of the jury instructions on the lesser offense. Defendant offered up no expert or lay testimony which might have remotely supported a claim of extreme emotional disturbance.
The Court finds that the language of AMCI 2d 301 specifically admonishes the jury as follows: "[i]f you have a reasonable doubt of the guilt of the defendant on the greater offense, you may find him guilty only of a lesser offense." The jury in its deliberation quickly found defendant guilty of Murder, 1st degree. The jury clearly followed the law and the instructions of the Court in its deliberation and in returning the guilty verdict on the charged criminal act, Murder 1st degree. Even if the lesser included offense had been included in the jury instructions, the jury would not have reached the lesser offense. Thus, there resulted no prejudice to defendant. In order to prevail on this claim, defendant must show that it was reasonably probable that the jury's decision would have been different if the jury instruction now asserted had been given. Eastin v. State , 2010 Ark. 275 [2010 WL 2210924;] Joiner v. State [2010 Ark. 309, 2010 WL 2539761]. No such showing has been or may hereafter be made. Thereafter in sentencing, the jury imposed life imprisonment, the greatest punishment available which is also clear evidence of the certainty of the jury's verdict and the lack of reasonable basis to have instructed on manslaughter.
The Court finds that defendant's argument and citation to Boyle v. State , 363 Ark 356, 214 S.W.3d 250 (2005), is misplaced. The Supreme Court specifically held that passion alone does not reduce a homicide from murder to manslaughter. As set forth above in the recitation of the undisputed facts, Defendant was challenged by the victim in the separate, earlier conflict in the presence of his girlfriend by the victim. He was incensed by the victim's verbal barrage at his home. That initial conflict had clearly ended when the victim left driving his car away from defendant's home. There was no evidence that the initial conflict had become physical. However, armed and angry, defendant chose to go to the victim's home to avenge an insult. He was the initial aggressor in a new confrontation. He was the only person armed with and shooting a handgun, killing his unarmed victim. These facts may well raise passion. However, the Court finds that such facts do not rise to an extreme emotional disturbance nor does defendant's conduct justify the use of deadly force.
The Court concludes that it must charge a jury on a lesser offense only if there is a rational basis for a verdict acquitting him of the charged offense. Herein, based upon undisputed facts, there was no rational basis to so charge the jury even if trial counsel had presented the correct jury instruction on the lesser offense. Thus, no prejudice resulted to defendant. Additionally, the Court concludes that the decision concerning a lesser offense was a matter of trial strategy. The Court may not label counsel ineffective merely because of possibly bad tactics or trial strategy.
The burden is upon the defendant to show that trial counsel's representation fell below an objective standard of reasonableness and that prejudice resulted from such errors. Wainwright v. State , 307 Ark. 569, 823 S.W.2d 449 (1992) ;
*489 Haywood v. State , 288 Ark. 266, 704 S.W.2d 168 (1986) and Douglas v. State , AR Supreme Court No. CR-17-546 @ p. 7 [540 S.W.3d 685] (March 15, 2018). Defendant was represented by an attorney, not a magician. Trial counsel could not create new facts which might have conformed to the theories now raised in this petition. Additionally, there is a presumption that counsel was competent and the burden is upon defendant to establish more than mere errors, omissions, mistakes, improvident strategy or bad tactics. White v. State , 301 Ark. 74, 781 S.W.2d 478 (1989). The Court concludes that this petition fails woefully in this regard.
I. Law & Analysis
"On appeal from a trial court's ruling on a petitioner's request for Rule 37 relief, this court will not reverse the trial court's decision granting or denying postconviction relief unless it is clearly erroneous. Kemp v. State , 347 Ark. 52, 55, 60 S.W.3d 404, 406 (2001). A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. Id. " Prater v. State , 2012 Ark. 164, at 8, 402 S.W.3d 68, 74. "The benchmark for judging a claim of ineffective assistance of counsel must be 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' Strickland [v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ]." Henington v. State , 2012 Ark. 181, at 3-4, 403 S.W.3d 55, 58. Pursuant to Strickland , we assess the effectiveness of counsel under a two-prong standard. First, a petitioner raising a claim of ineffective assistance must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. Williams v. State , 369 Ark. 104, 251 S.W.3d 290 (2007). A petitioner making an ineffective-assistance-of-counsel claim must show that counsel's performance fell below an objective standard of reasonableness. Springs v. State , 2012 Ark. 87, 387 S.W.3d 143. A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id.
Second, the petitioner must show that counsel's deficient performance so prejudiced petitioner's defense that he was deprived of a fair trial. Id. The petitioner must show there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. Howard v. State , 367 Ark. 18, 238 S.W.3d 24 (2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. Id. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. Id. Additionally, conclusory statements that counsel was ineffective cannot be the basis for postconviction relief. Anderson v. State , 2011 Ark. 488, 385 S.W.3d 783.
Turning to the merits, we note that the circuit court did not hold an evidentiary hearing. Rule 37.3 of the Arkansas Rules of Criminal Procedure provides that an evidentiary hearing should be held in a postconviction proceeding unless the files and record of the case conclusively show that the prisoner is entitled to no relief. Wooten v. State , 338 Ark. 691, 1 S.W.3d 8 (1999) (citing Bohanan v. State , 327 Ark. 507, 939 S.W.2d 832 (1997) (per *490 curiam) ). If the files and the record show that the petitioner is not entitled to relief, the circuit court is required to make written findings to that effect. Ark. R. Crim. P. 37.3(a).
II. Extreme-Emotional-Disturbance-Manslaughter Jury Instruction
For his sole point on appeal, Douglas argues that the circuit court erred in denying his claim--without a hearing--that trial counsel was ineffective in failing to present the proper jury instruction on extreme emotional disturbance manslaughter. Specifically, Douglas argues that trial counsel did not proffer the correct AMI Crim. 2d instruction explaining how the jury was to determine extreme-emotional-disturbance manslaughter. Based on trial counsel's failure to proffer the correct instruction, Douglas contends that he was prejudiced.
Pursuant to Strickland , Douglas must demonstrate that trial counsel's failure to proffer AMI Crim. 2d 1004-A amounted to deficient performance that fell below an objective standard of reasonableness that so prejudiced Douglas as to deprive him of a fair trial. In Sims v. State , we explained that "[t]o show prejudice under Strickland based on trial counsel's failure to request a specific instruction, the United States Supreme Court has held that an appellant must establish that it was 'reasonably likely that the instruction would have made any difference [in the outcome of the trial] in light of all the other evidence of guilt.' Berghuis v. Thompkins , 560 U.S. 370, 390, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010)." 2015 Ark. 363, at 10, 472 S.W.3d 107, 115. Further, there must be a rational basis in the evidence to warrant the giving of an instruction. Allen v. State , 326 Ark. 541, 932 S.W.2d 764 (1996). A party is entitled to an instruction on a defense if there is sufficient evidence to raise a question of fact or if there is any supporting evidence for the instruction. Yocum v. State , 325 Ark. 180, 925 S.W.2d 385 (1996).
Here, the relevant portion of the manslaughter statute provides that a person commits manslaughter if "[t]he person causes the death of another person under circumstances that would be murder, except that he or she causes the death under the influence of extreme emotional disturbance for which there is reasonable excuse." Ark. Code Ann. § 5-10-104(a)(1)(A) (Repl. 2013). The language previously used in this statute to describe the "extreme emotional disturbance" was the "heat of passion." Bowden v. State , 2014 Ark. 168, 4, 2014 WL 1515871 (citing Bankston v. State , 361 Ark. 123, 205 S.W.3d 138 (2005) ). The grade of a homicide may be reduced from murder to manslaughter by reason of a passion caused by a provocation apparently sufficient to "make the passion irresistible." Bowden , 2014 Ark. 168, at 4-5 (citing Collins v. State , 102 Ark. 180, 143 S.W. 1075 (1912) ). A jury instruction on extreme-emotional-disturbance manslaughter under § 5-10-104(a)(1) requires evidence that the defendant killed the victim following provocation such as "physical fighting, a threat, or a brandished weapon." Boyle v. State , 363 Ark. 356, 362, 214 S.W.3d 250, 253 (2005) (quoting Kail v. State , 341 Ark. 89, 94, 14 S.W.3d 878, 881 (2000) ).
At Douglas's trial, the "extreme emotional disturbance" formulation of manslaughter was proffered and rejected. The AMI Crim. 2d 1004 manslaughter jury instruction was proffered as follows:
Courtney Douglas is charged with the offense of manslaughter. To sustain this charge the State must prove beyond a reasonable doubt that:
(a) [Courtney Douglas caused the death of Terrance Billings under circumstances that would be murder, except *491 that he caused the death under the influence of extreme emotional disturbance for which there was a reasonable excuse. You should determine the reasonableness of the excuse from the viewpoint of a person in Courtney's situation under the circumstances as he believed them to be.]
However, Douglas argues that he was entitled to a separate instruction-AMI Crim. 2d 1004-A-which was added in response to this court's decision in Fincham v. State , 2013 Ark. 204, 427 S.W.3d 643. AMI Crim. 2d 1004-A provides:[1]
The law provides that if a person commits the offense of murder, but does so under the influence of extreme emotional disturbance for which there is reasonable excuse, that person has committed the offense of manslaughter rather than murder. You must determine reasonableness from the viewpoint of a person in the defendant's situation under the circumstances as he believed them to be.
(Defendant ), in asserting the defense of extreme emotional disturbance, is required only to raise a reasonable doubt in your minds. Consequently, if you believe that this defense has been shown to exist, or if the evidence leaves you with a reasonable doubt as to his guilt of murder rather than manslaughter, you may find him guilty only of manslaughter.
Whatever may be your finding as to this defense, you are reminded that the State still has the burden of establishing the guilt of (defendant ) upon the whole case beyond a reasonable doubt.
Douglas contends that had trial counsel properly presented AMI Crim. 2d 1004-A, he would have been entitled to an instruction on extreme-emotional-disturbance manslaughter. Yet the circuit court did not reject Douglas's proffered instruction because it was the incorrect version of the jury instruction. Instead, the circuit court refused to allow the instruction because "there was no rational basis to so charge the jury even if trial counsel had presented the correct jury instruction on the lesser offense." For the reasons that follow, we cannot say that the circuit court clearly erred in denying Douglas's petition for postconviction relief.
Here, the record demonstrates that Douglas and Billings got into a dispute at Douglas's home. After the dispute had fully concluded, Billings returned to his home. Douglas retrieved his firearm and initiated a second encounter with Billings at Billings's home. Douglas and Billings began arguing on the porch. Billings placed Douglas in a headlock. Pursuant to testimony presented at trial, Billings attempted to flee from Douglas by running back inside the house, at which point Douglas began shooting at him. This testimony was supported by the testimony of Sergeant Sanders who testified that there appeared to be bodily fluid inside the threshold, but not on the threshold itself. Yet there did not appear to be any blood, tissue, or other bodily fluids on the porch or door.
The State contends that a defendant cannot claim an extreme emotional disturbance from a provocation he or she prepared or precipitated. Stated differently, a *492 defendant charged with murder may not reduce the killing to extreme-emotional-disturbance manslaughter when the defendant arms himself in anticipation of a conflict or, having done so, initiates the conflict that leads to the provocation. To support its position, the State cites Smith v. State , 216 Ark. 1, 223 S.W.2d 1011 (1949).
In Smith , Smith was convicted of first-degree murder for the shooting death of his ex-wife, Sallie Barner. Id. at 2, 223 S.W.2d at 1012. According to Smith's statement, Smith and Sallie were married in Texas. Id. at 3, 223 S.W.2d at 1012. Smith had been married previously but he was under the impression that he and his first wife had obtained a divorce. Id. at 3, 223 S.W.2d at 1013. When Sallie learned that Smith was not divorced from his first wife, Sallie obtained an annulment of their marriage. Id. Smith was charged with bigamy, he entered his plea of guilty, and he was sentenced to three years' imprisonment in a Texas penitentiary. Id. After his release from prison, Smith came to Little Rock to recover personal property he had left with Sallie for safekeeping while he was in prison. Id. Sallie told Smith that she did not have the items, but she would collect the items and asked that Smith come back later. Id. A few days later, Smith went to Sallie's home in North Little Rock but learned that she had moved. Id. Because Smith was unable to locate Sallie's new residence, Smith went to a location in close proximity to Sallie's work and waited for her. Id. at 3-4, 223 S.W.2d at 1013. According to Smith's statement, Smith and Sallie began arguing. Id. at 4, 223 S.W.2d at 1013. Sallie told Smith that she was not going to return his property and was going to call the police. Id. Smith stated that he "went haywire" and he pulled the gun out and shot Sallie in the back. Id. at 5, 223 S.W.2d at 1013.
On appeal, Smith argued that the circuit court erred by refusing to instruct the jury on five requested instructions. Id. at 11, 223 S.W.2d at 1017. Relevant to the present appeal was requested-instruction No. 2, which reads as follows:
You are instructed that if you find that the defendant was provoked to commit the assault on the deceased which he did commit by a passion consisting either of anger or fear to such an extent that he was unable to resist or to refrain from the committing of such assault, then he would be guilty of one of the degrees of manslaughter which has just been defined to you, and he would not be guilty of murder in the first degree.
Id. In rejecting Smith's argument, we explained that a person cannot take advantage of a provocation invited and brought about by his own unlawful aggression in order to reduce the grade of his crime from murder to manslaughter when he has not, in good faith, attempted to retire from the encounter. Id. at 12-13, 223 S.W.2d at 1017-18 (citing Noble v. State , 75 Ark. 246, 87 S.W. 120 (1905) ). Further, this court explained,
Instruction No. 2, requested by appellant, entirely ignored the idea of malice and permitted the jury to reduce the crime to manslaughter even though they found that appellant brought on the difficulty maliciously and with the specific intent to kill. As this court said in Price v. State , 114 Ark. 398, 170 S.W. 235, 239 : 'The omission is an important one, for if defendant sought the difficulty with malice against the deceased and assaulted the latter, or used opprobrious epithets towards him for the purpose of bringing on the difficulty, he cannot claim the benefit of a sudden passion, aroused by an assault made by the deceased in consequence of the appellant's own conduct.' We find no error in the court's *493 refusal to give the requested instructions.
Id. at 13, 223 S.W.2d at 1018.
We find Smith helpful to our ineffective-assistance-of-counsel analysis in this case. As in Smith , Douglas cannot take advantage of a "provocation invited and brought about by his own unlawful aggression, in order to reduce the grade of his crime from murder to manslaughter[.]" Id. at 12, 223 S.W.2d at 1017. Although Billings may have been the initial aggressor, the record demonstrates that the initial dispute had fully concluded, with Billings leaving the scene and returning to his home. After the conclusion of the initial argument, Douglas, with a firearm in tow, initiated a second encounter at Billings's home. Thus, pursuant to Smith , Douglas cannot take advantage of a provocation he invited-here, through the initiation of the second encounter with a firearm-in order to reduce his crime from murder to manslaughter. Because Douglas invited the provocation that ensued between him and Billings, we hold that Douglas was not entitled to a jury instruction on extreme emotional disturbance. Accordingly, trial counsel's failure to proffer the proper version of extreme-emotional-disturbance manslaughter is of no moment.
With regard to the first Strickland prong, because Douglas was not entitled to the extreme-emotional-disturbance-manslaughter instruction, trial counsel did not render unreasonably deficient performance in his failure to proffer AMI Crim. 2d 1004-A. However, even if we were to assume that trial counsel was deficient, Douglas has failed to demonstrate that he was prejudiced by trial counsel's error. Pursuant to Sims , supra , in light of all the other evidence of Douglas's guilt, he has failed to establish that it was reasonably likely that the AMI Crim. 2d 1004-A instruction would have made any difference in the outcome of his trial. Under the facts of the present case, there is no evidence Douglas caused Billings's death under the influence of extreme emotional disturbance for which there is reasonable excuse. Simply put, we are not persuaded by Douglas's position that he demonstrated an extreme emotional disturbance for which there was a "reasonable excuse" when Billings placed him in a headlock during the second dispute that Douglas initiated. Accordingly, the circuit court's decision to deny his petition for Rule 37 relief was not clearly erroneous, and we affirm. Because we affirm on this basis, we decline to address Douglas's remaining arguments.
Affirmed.
Hart, J., dissents.
Josephine Linker Hart, Justice, dissenting.
I dissent. Put simply, in a murder case where there was evidence that the defendant and the victim were "angry" with each other, that the victim "charged" the defendant in the moments before the shooting, and an eye-witness testified that the victim was holding the defendant in a headlock at the time the defendant shot the victim, the defendant should have sought and received an instruction for extreme-emotional-disturbance manslaughter.
One is entitled to a jury instruction for a given legal proposition if there is "any rational basis" for giving it, based upon the evidence presented at trial. Grillot v. State , 353 Ark. 294, 318, 107 S.W.3d 136, 150 (2003) ("An instruction should only be excluded when there is no rational basis for giving it."). We have held repeatedly that, in order for a jury to be instructed on extreme-emotional-disturbance manslaughter, there must be evidence that the defendant *494 killed the victim in the moments following some kind of provocation, such as "physical fighting , a threat, or a brandished weapon." Boyle v. State , 363 Ark. 356, 362, 214 S.W.3d 250, 253 (2005) (emphasis added). Furthermore, when the circuit court denies a hearing on a Rule 37 petition, in order for the appellate court to affirm the denial, it must be apparent from the face of the petition or the record that the petitioner is not entitled to relief. Montgomery v. State , 2011 Ark. 462, 14, 385 S.W.3d 189, 200.
Here, the testimony about the defendant being restrained in a headlock at the time he shot the victim warranted an instruction for extreme-emotional-disturbance manslaughter. Douglas's counsel's failure to seek out or obtain that instruction was deficient, and as a result, the jury convicted Douglas of first-degree murder without even being able to consider whether the lesser offense of manslaughter could be appropriate. The majority's suggestion that Douglas would not have even been entitled to the manslaughter instruction is misplaced.
Our system of justice relies upon the parties to present each side of the case through adversarial representation and the jury to decide what is actually proven at the trial. The parties' attorneys, tasked with presenting the best case for their respective clients, play a large and important role in this process. This system contemplates that the jury will receive and consider the evidence objectively, follow jury instructions (several, probably) from the trial court about any applicable legal authorities, listen to arguments (several, probably) from each party's counsel about how the legal propositions set forth in those instructions should or should not apply to the evidence presented, and then proceed to deliberations where it will separate the wheat from the chaff.
In other words, there is (and must be) a lot of room between a trial judge's determination that there is "any rational basis" for giving a particular instruction in a particular case, and the jury's determination that the legal proposition set forth in that instruction was actually established at trial. A jury is free to reject the legal propositions contained in a thousand different jury instructions if it finds that the applicable burdens of proof for those legal propositions are not satisfied by the evidence presented at the trial, but a jury cannot agree with a legal proposition if that legal proposition is never set forth in an instruction for the jury's consideration. This is why we require a jury instruction where there is "any rational basis" for giving it. One can speculate about what impact the withholding of the manslaughter instruction had in the case presently before us, but surely this practice of superseding the jury's role as fact-finder must be discouraged. Accordingly,
I dissent.

The "note on use" following AMI Crim. 2d 1004-A provides that this instruction is used with AMI Crim. 2d 1004 when the defendant is asserting the defense of extreme emotional disturbance. The note further instructs to use AMI Crim. 2d 301 (Lesser Included Offenses: Introductory Instruction) and AMI Crim. 2d 302 (Lesser Included Offenses: Transitional Instruction) with the bracketed language for extreme emotional disturbance manslaughter with the instructions for the murder offense(s) being submitted, then this instruction, followed by AMI Crim. 2d 1004.