Cite as 2020 Ark. App. 171

# ARKANSAS COURT OF APPEALS

## DIVISION III
No. CR-19-826

| | | |
|---|---|---|
| ROBERT DRAFT | | **Opinion Delivered** March 11, 2020 |
| | APPELLANT | APPEAL FROM THE WHITE COUNTY CIRCUIT COURT [NO. 73CR-14-206] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE ROBERT EDWARDS, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Robert Draft appeals the denial of his petition for postconviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure. Draft argues that the circuit court erred in denying his claim that trial counsel was ineffective for failing to offer the proper jury instructions on extreme-emotional-disturbance manslaughter. We affirm.

Draft was convicted of second-degree murder in the shooting death of his father-in-law, Douglas Cloyes. This court affirmed his conviction in *Draft v. State*, 2016 Ark. App. 216, 489 S.W.3d 712. The shooting occurred after Draft beat his wife, and she escaped to her parents' home, 200 yards away. Draft's wife and her mother left for the hospital, but her father, Mr. Cloyes, remained at his home. As recounted in our opinion,

> [a]ppellant then drove his truck, with a loaded .223-caliber semi-automatic rifle, to the Cloyeses' home. Mr. Cloyes was standing near the gravel driveway, and appellant parked his truck in the grass between Mr. Cloyes and the house. According to appellant, Mr. Cloyes began shooting at him. Appellant testified that he then reached back into his truck, grabbed his rifle, and began firing at Mr. Cloyes. Mr. Cloyes was

hit by five rounds from appellant's rifle and died as a result. Appellant returned to his home, gathered some money and a telephone, disassembled the rifle and threw it in a river, and drove to Michigan. A .22-caliber pistol was found under Mr. Cloyes's body, and three spent .22 cartridges were found nearby. At least thirteen spent .223 cartridges were found approximately sixty-five feet from the body, at the site of truck-tire tracks in Mr. Cloyes's yard.

*Draft*, 2016 Ark. App. 216, at 1–2, 489 S.W.3d at 713–14. Draft was charged with first-degree murder, but the jury found him guilty of the lesser-included offense of second-degree murder as well as second-degree battery in the beating of his wife. He was sentenced to thirty years' imprisonment for the murder and a fifteen-year sentencing enhancement for the use of a firearm in the murder.

In his petition for postconviction relief[1] and on appeal, Draft argues that trial counsel was ineffective for failing to provide the proper jury instructions to allow the jury to consider the charge of extreme-emotional-disturbance manslaughter. Among the instructions provided to the jury was AMI Crim. 2d 301 (AMCI 301), the introductory instruction on lesser-included offenses:

> Robert Draft is charged with First Degree Murder. This charge includes the lesser offenses of Second Degree Murder, Manslaughter and Negligent Homicide. You may find the defendant guilty of one of these offenses or you may acquit him outright.
>
> If you have a reasonable doubt of the guilt of the defendant on the greater offense, you may find him guilty only of a lesser offense.
>
> If you have a reasonable doubt as to the defendant's guilt on all offenses, you must find him not guilty.

---

[1]Draft timely filed his original pro se petition for postconviction relief in 2016, but the petition ultimately heard by the court was his third amended petition filed after appointment of counsel.

The jury was also provided with the transitional instruction, AMI Crim. 2d 302 (AMCI 302), between each offense. Thus, the jury was instructed in relevant part as follows:

> If you have a reasonable doubt of the defendant's guilt on the charge of Murder in the First Degree you will then consider the charge of Murder in the Second Degree.

> If you have a reasonable doubt of the defendant's guilt on the charge of Murder in the Second Degree you will then consider the charge of Manslaughter.

To find Draft guilty of manslaughter, the jury was instructed that the State had to prove that Draft either recklessly caused the death of Cloyes or caused his death "under circumstances that would be murder, except that he caused the death under the influence of extreme emotional disturbance for which there was a reasonable excuse."

Pursuant to *Fincham v. State*, 2013 Ark. 204, 427 S.W.3d 643, Draft argues that AMCI 301 and AMCI 302 improperly stated the law to the jury. In *Fincham*, the supreme court noted that extreme-emotional-disturbance manslaughter was not a traditional lesser-included offense because one can kill purposely or knowingly, as in first- and second-degree murder, and yet be guilty only of manslaughter. The *Fincham* court held that, pursuant to the same instructions at issue here, the jury was erroneously instructed not to consider extreme-emotional-disturbance manslaughter unless it first found reasonable doubt as to murder. Instead, the jury should have been instructed to consider manslaughter after it found Fincham guilty of murder. The court concluded that the failure to accurately state the law prevented the jury from considering the lesser offense of manslaughter.

As in *Fincham*, Draft argues that the jury was improperly instructed that it must acquit him of first-degree murder and second-degree murder before ever considering the charge of extreme-emotional-disturbance manslaughter. He contends that counsel was ineffective

3

for failing to present AMI Crim. 2d 1004-A (AMCI 1004-A), an instruction adopted in response to *Fincham*.[2] The "note on use" for this instruction provides that it is to be used with AMCI 301, AMCI 302, and the manslaughter instruction (AMI Crim. 2d 1004) when the defendant is asserting the defense of extreme emotional disturbance.

After a hearing, the circuit court denied Draft's petition upon finding that he failed to meet the first prong of the test for ineffective assistance of counsel. The court found that the nature of Draft's defense at trial was justification, not extreme emotional disturbance; that there was no credible evidence at trial of provocation by the victim to justify an extreme-emotional-disturbance instruction; and that even if trial counsel had requested AMCI 1004-A, the instruction would not have been given.

When reviewing a circuit court's ruling on a Rule 37 petition, we will not reverse the circuit court's decision granting or denying postconviction relief unless it is clearly

---

[2]AMCI 1004-A provides as follows:

> The law provides that if a person commits the offense of murder, but does so under the influence of extreme emotional disturbance for which there is reasonable excuse, that person has committed the offense of manslaughter rather than murder. You must determine reasonableness from the viewpoint of a person in the defendant's situation under the circumstances as he believed them to be.

> (*Defendant*), in asserting the defense of extreme emotional disturbance, is required only to raise a reasonable doubt in your minds. Consequently, if you believe that this defense has been shown to exist, or if the evidence leaves you with a reasonable doubt as to his guilt of murder rather than manslaughter, you may find him guilty only of manslaughter.

> Whatever may be your finding as to this defense, you are reminded that the State still has the burden of establishing the guilt of (*defendant*) upon the whole case beyond a reasonable doubt.

erroneous. *Sorum v. State*, 2019 Ark. App. 354, 582 S.W.3d 18. A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.*

The benchmark for judging a claim of ineffective assistance of counsel must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668 (1984). Pursuant to *Strickland*, we assess the effectiveness of counsel under a two-prong standard. First, a petitioner raising a claim of ineffective assistance must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. *Douglas v. State*, 2019 Ark. 57, 567 S.W.3d 483. A petitioner making an ineffective-assistance-of-counsel claim must show that counsel's performance fell below an objective standard of reasonableness. *Id.* A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

Second, the petitioner must show that counsel's deficient performance so prejudiced petitioner's defense that he or she was deprived of a fair trial. *Id.* The petitioner must show there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* Unless a petitioner makes both showings, it

5

cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.*

Draft argues that counsel's failure to propound the proper jury instructions was a fundamental error that meets the first prong under *Strickland*. He argues that contrary to the circuit court's finding, he clearly would have been entitled to AMCI 1004-A had he sought it. He claims that he was prejudiced because the jury was not allowed to consider extreme-emotional-disturbance manslaughter. The State does not dispute Draft's claim that the proper instructions for extreme-emotional-disturbance manslaughter were not given. Instead, the State argues that Draft cannot establish a reasonable probability that but for counsel's alleged deficient performance the jury would have convicted him of manslaughter instead of second-degree murder.

As the State notes, Draft's defense at trial was self-defense, not extreme emotional disturbance. Draft testified that he drove to Cloyes's home because Cloyes yelled at him to come up there, but he did not expect a physical altercation. Draft said that his rifle was already in his truck and that he shot Cloyes because Cloyes was shooting at him when Draft got out of his truck. In closing arguments, trial counsel argued self-defense and expressly argued that the evidence did not support a verdict for extreme-emotional-disturbance manslaughter. Trial counsel explained to the jury that extreme emotional distress is when "you're freaking out" or "you kind of lose your senses and go far beyond what you need to do." He said that to find this the jury would have to find that Draft got mad and shot Cloyes in retaliation but "that's not what the evidence is."

6

At the Rule 37 hearing, trial counsel testified that the nature of the defense was self-defense but that the jury instruction for extreme-emotional-disturbance manslaughter did not hurt the defense. Counsel said that at the time of trial, he was not familiar with the issue raised in *Fincham*. The prosecutor argued that not only did trial counsel not argue extreme-emotional-disturbance manslaughter to the jury, he did not propose the instruction for it. She said that the instruction "probably" came from her.

Assuming that trial counsel was deficient in failing to request the jury be instructed with AMCI 1004-A, we hold that Draft has failed to establish a reasonable probability that the instruction would have made any difference in the outcome of his trial. To show prejudice under *Strickland* based on trial counsel's failure to request a specific instruction, the United States Supreme Court has held that an appellant must establish that it was "reasonably likely that the instruction would have made any difference [in the outcome of the trial] in light of all the other evidence of guilt." *Douglas*, 2019 Ark. 57, at 8, 567 S.W.3d at 490 (quoting *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010)). AMCI 1004-A is to be used in conjunction with AMCI 1004 when the defendant is asserting the defense of extreme emotional disturbance. Here, the defense was self-defense and was supported by Draft's testimony. In closing arguments, trial counsel argued that the evidence did not support a finding that Draft was acting under extreme emotional distress. We hold that the error in the instructions did not so prejudice Draft's defense that he was deprived of a fair trial. Accordingly, the circuit court's decision to deny his petition for Rule 37 relief was not clearly erroneous, and we affirm.

Affirmed.

Gruber, C.J., and Virden, J., agree.

*Lightle, Raney, Streit & Streit, LLP*, by: *Jonathan R. Streit*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Pamela Rumpz*, Sr. Ass't Att'y Gen., for appellee.